UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DARNELL E. WILLIAMS and YESSENIA M. TAVERAS,<br><br>    *Plaintiffs*,<br><br>v.<br><br>JOHN B. KING, JR., in his official capacity as Secretary of the United States Department of Education, and JACOB J. LEW, in his official capacity as Secretary of the United States Department of the Treasury,<br><br>    *Defendants*. | **FIRST AMENDED COMPLAINT**<br><br>Civil Action No. 16-11949 |

## INTRODUCTION

1.  Plaintiffs Darnell Williams and Yessenia Taveras each borrowed nearly ten thousand dollars in federal student loans in order to attend a school operated by the now-defunct Corinthian Colleges, Inc. ("Corinthian"), one of the most notorious purveyors of for-profit higher education in history. Multiple investigations conducted by state attorneys general, the Consumer Financial Protection Bureau, the Department of Education, and others have documented the widespread fraud and misconduct of Corinthian. Plaintiffs' experiences at Everest Institute in Chelsea, Massachusetts ("Everest Chelsea") were consistent with the established patterns of fraud and illegal conduct by Corinthian.

2.  Today, Plaintiffs Williams and Taveras are in default on their federal student loans, and face the threat of continued involuntary collection at the hands of Defendants, the Secretary of Treasury and the Secretary of the Department of Education (collectively, "Defendants"). Plaintiffs seek a declaration that Defendants made an improper final

determination, or failed to make a final determination, of the legal enforceability of their debts; certified and recertified the enforceability of their debts even though Defendants knew or should have known of the possible bars to collection of their loans and despite pending applications to establish the nonenforceability of their debts; accepted the certification and recertification of their debts for offset; and did offset their debts, all in violation of the Debt Collection Improvement Act, 31 U.S.C. §§ 3701 *et seq.*, and the Administrative Procedure Act, 5 U.S.C. §§ 706(2)(A) and/or 706(1).

3. By statute, the Secretary of Education has the duty to certify to the Secretary of Treasury the legal enforceability of debts referred for seizure through tax refund offset, and to withdraw such certification when it is no longer valid because there is a question about the legal enforceability of the underlying debt. For his part, the Secretary of Treasury may only offset legally enforceable debts and may deny certifications that fall short of this standard.

4. Defendants possess ample information to conclude that Plaintiffs' debts are presumptively nonenforceable, and that there are bars to collection that Plaintiffs can raise. The Department of Education has recognized that borrowers such as Plaintiffs have a presumptive defense to the enforcement of their student loans based on Corinthian's illegal conduct. Additionally, the Attorney General of Massachusetts has formally requested that the Department wipe out the loans of all people, including Plaintiffs, who attended a Corinthian-operated school within the Commonwealth. This application is currently pending before the Department. The Treasury Department has issued a ruling concerning the tax status of Corinthian loans discharged because of fraud and misconduct of the school.

5.	Despite these facts, in 2016, Defendants seized Plaintiffs' federal tax refunds in service of their Corinthian-related student loan debts. Now that their student loan debts are certified for tax seizure, Plaintiffs face the ongoing risk of future offset.

6.	Thus, Plaintiffs ask this Court to declare Plaintiffs' student loan debts not certifiable for collection by tax refund offset, and to strike as arbitrary and capricious the Department of Education's determination that Plaintiffs' debts are legally enforceable or, in the alternative, to rule that the Department of Education has failed to perform a mandatory duty to review Plaintiffs' debts prior to certification. As further relief, Plaintiffs seek to halt the certification of all Corinthian-related debts by Defendants, and a restoration of amounts previously seized through offset.

## JURISDICTION AND VENUE

7.	This court has jurisdiction pursuant to 28 U.S.C. § 1331; 28 U.S.C. §§ 2201–2202; and 5 U.S.C. § 702.

8.	Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1) because a substantial part of the events giving rise to the claim occurred in Massachusetts, a substantial part of property that is the subject of the action is situated in Massachusetts, and the Plaintiffs reside in Massachusetts.

## PARTIES

9.	Plaintiff Darnell E. Williams resides in Dorchester, Massachusetts.

10.	Plaintiff Yessenia M. Taveras resides in Peabody, Massachusetts.

11.	Defendant John B. King, Jr., is the Secretary of the United States Department of Education. In his official capacity, the Secretary of Education has the power to enforce, pay, compromise, waive, or release any claim held by the Department of Education. In this capacity,

the Secretary of Education may also certify and refer student loan debts to the Department Treasury for payment by offset of the borrower's federal tax refund.

12. Defendant Jacob J. Lew is the Secretary of the United States Department of Treasury. In his official capacity, the Secretary of Treasury oversees the Bureau of the Fiscal Service of the Treasury Department ("Fiscal Service"), which administers the offset of taxpayers' federal tax refunds to satisfy debts to federal agencies.

## BACKGROUND

13. The Department of Education oversees and is responsible for the federal student loan program. 20 U.S.C. § 1070.

14. Under federal law, federal student loan borrowers may assert misconduct by their schools as a defense to repayment of their loans.

15. There is over $1.2 trillion dollars of outstanding student loan debt in the United States, the vast majority of which is owed directly or indirectly to the United States.

16. Over eight million borrowers have defaulted on $128 billion in federally issued student loans.

17. As overseer of the federal student loan program, the Department of Education possesses extensive extrajudicial collection powers, including the power to garnish federal student loan borrowers' wages and benefits and seize federal tax refunds. *See* 31 U.S.C. § 3716; 31 U.S.C. § 3720A; 31U.S.C. § 3720D.

18. Like other agencies, the Department of Education relies on the Department of Treasury's Fiscal Service to effectuate a tax offset in service of a debt owed to it.

19. In fiscal year 2015, the Department of Treasury collected $89.3 billion in debt owed to the Department of Education.

20. The federal tax offset program is provided for by the Debt Collection Improvement Act ("DCIA"), codified at 31 U.S.C. § 3701 *et seq.*

21. Before submitting a debt to the Department of Treasury, the Department of Education must comply with certain notice requirements for the borrower and then certify only legally enforceable debts to the Department of Treasury. 31 U.S.C. §§ 3716, 3720A(b)(3); 31 C.F.R. § 285.2(d); 34 C.F.R. § 30.33.

22. Prior to certifying a debt to Treasury for tax offset, the Department of Education must make a final determination of legal enforceability, which includes certification that the debt is due in the amount stated and that there are no legal bars to collection. 31 U.S.C. § 3720A(b); 31 C.F.R. § 285.2(d)(1)(i); 31 C.F.R. § 285.5(b), (d)(5).

23. "Legally enforceable" means there has been a final agency determination that the debt, in the amount stated, is due, and there are no legal bars to collection by offset. 31 C.F.R. § 285.5(b).

24. The Fiscal Service may reject a referral which does not contain a proper certification of legal enforceability. 31 C.F.R. § 285.2(d)(5).

25. After the Department of Education certifies a debt, the Fiscal Service offsets the debtor's tax refund to satisfy the debt in question. 31 C.F.R. § 285.2(b)(2).

26. Finally, the Fiscal Service informs the debtor of the offset after the offset has occurred. 31 C.F.R. § 285.2(e).

27. Once the Secretary of Education has notified a debtor of the Secretary's intent to offset a debt, the Secretary may offset future years' tax refunds without providing the debtor with additional pre-deprivation notice. 34 C.F.R. §§ 30.22(d), 30.33(a).

28. In order to effectuate future offsets, each year, the Secretary of Education must re-certify the debt to the Fiscal Service. This certification must be in writing and must include certification that the debt continues to be legally enforceable. 31 C.F.R. § 285.5(d)(3)(i)(B), (d)(7)(i).

29. The Department of Education has an ongoing obligation to immediately notify the Fiscal Service of any change in status of the legal enforceability of the debt. 31 C.F.R. § 285.2(d)(4); 31 C.F.R. § 285.5(d)(10)(iv).

30. The Department of Treasury has an ongoing obligation to use tax offset only for legally enforceable debts. *See* 31 U.S.C. § 3720A.

## FACTUAL ALLEGATIONS

### Corinthian's Illegal Conduct

31. The Department of Education has known for years that Corinthian committed widespread fraud and misrepresentation.

32. This knowledge is based on, *inter alia*, the Department of Education's own investigations and audits, as well as the investigations and enforcement actions of multiple other law enforcement agencies.

33. In 2007, the Attorney General of California sued Corinthian for a "persistent pattern of unlawful conduct" in the operation of its schools in California, including Everest College. Such unlawful conduct included the promotion of falsely inflated job placement statistics and the use of other untrue and misleading statements to induce students to enroll in Corinthian schools. The case was concluded by stipulated judgment entered that same year, which prevented Corinthian from enrolling new students in specific programs, cancelled student

debt owed directly to the school, and ordered further injunctive provisions related to calculation of job placement rates.

34. The Attorney General of California again sued Corinthian in 2013 for violating California law by misrepresenting job placement rates to students and investors, using misleading advertising, and making misrepresentations to students in order to enroll them in Corinthian programs. Following submission of proof by the California Attorney General, the court entered a default judgment against Corinthian in 2016, containing multiple findings of systemic fraud and misrepresentation by Corinthian.

35. On April 3, 2014, the Massachusetts Attorney General filed suit against Corinthian for violations of Massachusetts consumer protection law at the two Everest Institutes in Massachusetts ("Everest MA"), including Everest Chelsea, which Plaintiffs attended.

36. In her suit, the Massachusetts Attorney General alleged that, beginning in 2009 or earlier, the school misrepresented, *inter alia*, (1) the urgency of enrollment and the need to enroll immediately in Corinthian schools, (2) Everest MA's influence and historical success in finding jobs in the students' fields of study, (3) the employment opportunities available to Everest MA graduates, (4) the earnings of Everest MA graduates, (5) the assistance Everest MA schools provide graduates in obtaining employment in their fields of study, (6) the nature, character, and quality of Everest MA programs, (7) the transferability of Everest MA credits, (8) the availability of externships in the students' fields of study, together with the training provided by and employment opportunities accompanying externships, and (9) the nature and availability of financial aid. The Attorney General's Motion for Summary Judgment, supported by thousands of pages of evidence, is currently pending.

37. In 2014, the Consumer Financial Protection Bureau filed a lawsuit against Corinthian alleging that for years, the school had induced prospective students to enroll through false and misleading representations about its graduates' career opportunities and likelihood of obtaining jobs upon graduation, using falsely inflated job placement statistics. The lawsuit further alleged that Corinthian deceptively encouraged students to take out private student loans in a program facilitated by Corinthian for the purpose of evading the federal law preventing schools from receiving more than 90% of their revenue from federal financial aid programs. In 2015, the court entered a default judgment against Corinthian, which included numerous findings that Corinthian engaged in unfair and deceptive acts on a widespread basis.

38. In June 2014, the Department of Education placed Corinthian on "Heightened Cash Monitoring," requiring Corinthian to wait 21 days after submitting student enrollment data to draw down federal student aid funds. The Department took this action after Corinthian failed to respond to Department requests for information, including information regarding Corinthian's job placement rates at every Corinthian school.

39. In April 2015, the Department of Education informed Corinthian that it intended to issue a fine of approximately $30,000,000 against Corinthian, based on the Department's analysis of documentation submitted in conjunction with a program review of some Corinthian schools. The fine was based on Corinthian's violation of Department of Education regulations requiring accurate disclosures concerning job placement rates.

40. On May 4, 2015, Corinthian filed for Chapter 11 bankruptcy.

41. On June 8, 2015, the Department of Education announced that certain students of Corinthian schools who had been harmed by the schools' fraudulent practices would be presumptively eligible for a discharge of their federal loans under the "defense to repayment"

framework. The Department reported that during the course of its investigation of Corinthian, it uncovered evidence of widespread misrepresentation, including misrepresentations regarding job placement rates. At the time of the announcement, the relief applied only to students of Heald College, one of Corinthian's West Coast chains.

42. On November 30, 2015, the Massachusetts Attorney General submitted a formal "defense to repayment" application to the Department of Education on behalf of all students who attended Everest Institutes in Massachusetts—from the time that Corinthian began to operate campuses under its Everest Institute brand in 2007, until the schools shuttered under the weight of their own fraud in 2015—requesting that the Department find all such federal loans unenforceable and discharge them.

43. The Attorney General supported her application with 2700 pages of investigatory findings, supporting evidence, and attestations from former Corinthian students. In the view of the state's chief law enforcement officer, students, including Plaintiffs, are "legally entitled to relief" because an "extensive investigation" of Corinthian's Massachusetts operations "uncovered a program built on predation and lies," amounting to "an unrelenting scheme to secure unaffordable federal loans from vulnerable students, without providing the education, services, or opportunities promised." According to the Attorney General, "Corinthian amounted to a pervasive violation of Massachusetts law."

44. On March 25, 2016, the Department of Education announced an expansion of the pool of Corinthian students presumptively eligible for "defense to repayment." This expansion included students who attended Everest Institutes in 21 states, including Everest Chelsea. As a basis for relief, the Department again cited evidence of widespread fraud, including job placement falsification uncovered by the Department's investigation.

45. According to the Department of Education, students who attended Everest Chelsea's Massage Therapy program between July 1, 2011, and September 30, 2014, are presumptively eligible for a "defense to repayment."

46. According to the Department of Education, students who attended Everest Chelsea's Medical Assistant program between July 1, 2011, and September 30, 2014, are presumptively eligible for a "defense to repayment."

47. The Department of Education has also identified cohorts of borrowers presumptively eligible for a "defense to repayment" who attended Everest Chelsea in the following programs: Dental Assistant (between July 1, 2012, and September 30, 2013); Medical Administrative Assistant (between July 1, 2011, and September 30, 2014); and Medical Insurance Billing and Coding (between July 1, 2011, and September 30, 2014).

48. The Department of Education has also identified cohorts of borrowers presumptively eligible for a "defense to repayment" who attended Everest Institute in Brighton, Massachusetts, in the following programs: Dental Assistant (between July 1, 2010, and September 30, 2011); Massage Therapy (between July 1, 2010, and September 30, 2014); Medical Administrative Assistant (between July 1, 2010, and September 30, 2014); and Medical Assistant (between July 1, 2010, and September 30, 2014).

49. In all, the Department to date has identified over 100 campuses formerly operated by Corinthian Colleges as having cohorts of borrowers presumptively eligible for a "defense to repayment."

50. In late 2015, the Treasury Department issued an Internal Revenue Service Revenue Procedure stating its position that former Corinthian students receiving a discharge

through "defense to repayment" need not recognize as income (and thus pay income taxes on) amounts discharged.

51.     The Treasury Department reported being aware that the Department of Education had determined that a large number of Corinthian students were presumptively eligible for discharge through "defense to repayment."

52.     Further, the Treasury Department recognized that "most borrowers whose Corinthian student loans are discharged under the Defense to Repayment discharge process would be able to exclude from gross income all or substantially all of the discharged amounts based on fraudulent misrepresentations made by the colleges to the students" or other available bases such as insolvency.

### Offset of Plaintiff Darnell Williams's Tax Refund for Corinthian Debt

53.     Plaintiff Williams attended Everest Institute, located at 70 Everett Avenue, Number 22, Chelsea, Massachusetts 02150 from March 29, 2011, to December 28, 2011, in the Massage Therapy program.

54.     Plaintiff Williams borrowed a $2000 unsubsidized Stafford Direct Loan, a $4000 unsubsidized Stafford Direct Loan, and a $3500 subsidized Stafford Direct Loan to pay for his attendance at Everest Chelsea.

55.     Everest Chelsea subjected Plaintiff Williams to illegal conduct including deception and misrepresentation throughout his time at Everest, consistent with the evidence marshaled by the Department of Education, the Massachusetts Attorney General, and other law enforcement agencies. In particular, representatives of Everest Chelsea harassed Plaintiff Williams, misrepresented the employment and earnings outcomes of its graduates,

misrepresented its job placement rates, did not deliver on promised career placement services, and charged exorbitant tuition, financed by unaffordable loans.

56. On December 1, 2014, Plaintiff Williams defaulted on all three of his federal student loans.

57. On August 14, 2015, Plaintiff Williams received a Notice of Proposed Treasury Offset from the Department of Education.

58. On information and belief, on a date known to Defendant Secretary of Education, the Department of Education certified to Treasury that Plaintiff Williams's debt was legally enforceable.

59. On a date known to the Defendants, the Secretary of Education referred Plaintiff Williams's student loan debt to the Fiscal Service for tax offset.

60. On May 9, 2016, the Fiscal Service offset Plaintiff Williams's tax refund for payment of his student loan debt. The offset seized all $1263 of Plaintiff Williams's tax refund for this purpose.

61. According to Department of Education, Plaintiff Williams owes, approximately, an additional $10,833 in federal student loan debt attributable to Corinthian.

62. Plaintiff Williams's student loan debt remains certified for offset.

63. Based on his dates of attendance in the Everest Chelsea Massage Therapy program, Plaintiff Williams is presumptively eligible for a "defense to repayment."

64. In addition, the Attorney General of Massachusetts has applied to the Department of Education for a "borrower defense" on Plaintiff Williams's behalf.

**Offset of Plaintiff Yessenia Taveras's Tax Refund for Corinthian Debt**

65. Plaintiff Taveras attended Everest Institute, located at 70 Everett Avenue, Chelsea, Massachusetts 02150 from October 28, 2010, to July 14, 2011, in the Medical Assistant program.

66. Plaintiff Taveras borrowed a $6000 unsubsidized Stafford Direct Loan and a $3500 subsidized Stafford Direct Loan to pay for her attendance at Everest Chelsea.

67. Everest Chelsea subjected Plaintiff Taveras to illegal conduct including deception and misrepresentation throughout her time at Everest, consistent with the evidence marshaled by the Department of Education, the Massachusetts Attorney General, and other law enforcement agencies. In particular, representatives of Everest Chelsea misrepresented job placement rates, misrepresented instructor quality and availability, did not deliver on promised career placement and internship placement services, and charged exorbitant tuition, financed by unaffordable loans.

68. On September 21, 2014, Plaintiff Taveras defaulted on all of her federal student loans.

69. On information and belief, on a date known to Defendant Secretary of Education, the Department of Education certified to Treasury that Plaintiff Taveras's debt was legally enforceable.

70. On a date known to the Defendants, the Secretary of Education referred Plaintiff Taveras's student loan debt to the Fiscal Service for tax offset.

71. On June 6, 2016, the Fiscal Service offset the tax refund owed to Plaintiff Taveras and her spouse for payment of her student loan debt. The offset seized all $4999 of the refund owed to Plaintiff Taveras and her spouse for this purpose.

72. According to Department of Education, Plaintiff Taveras owes, approximately, an additional $7044 in federal student loan debt attributable to Corinthian.

73. Plaintiff Taveras's student loan debt remains certified for offset.

74. Based on her dates of attendance in the Everest Chelsea Medical Assistant program, Plaintiff Taveras is presumptively eligible for a "defense to repayment."

75. In addition, the Attorney General of Massachusetts has applied to the Department of Education for a "borrower defense" on Plaintiff Taveras's behalf.

## CAUSES OF ACTION

### Count One: Declaratory Judgment of Non-Certifiability of Corinthian Debt

76. Plaintiffs repeat and reallege each of the foregoing paragraphs, as if fully set forth herein.

77. Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201 that Defendants have violated and continue to violate the Debt Collection Improvement Act by certifying, recertifying, failing to revoke the certification of, accepting the certification of, and offsetting of Plaintiffs' debts for offset.

78. The voluminous public record of fraud at Everest Chelsea and other Corinthian campuses, the Massachusetts Attorney General's group application for "defense to repayment," and the Department of Education's findings all undermine the legal enforceability, and thus the certifiability for offset, of Plaintiffs' student loan debts.

79. This evidence, Plaintiffs' presumptive eligibility for "defense to repayment," and the pending application of the Massachusetts Attorney General preclude certification of the debts by the Secretary of Education for tax offset by the Department of Treasury's Fiscal Service.

80. These circumstances trigger the Secretary of Education's continuous obligation to promptly notify the Fiscal Service of any change in the legal enforceability of Plaintiffs' debts.

81. These circumstances implicate the Fiscal Service's right to reject referrals that do not contain a proper certification of legal enforceability because the Department of Treasury may use tax offset only for legally enforceable debts.

82. A declaration that Plaintiffs' federal student loan debts are not certifiable for tax refund offset would redress the injury to Plaintiffs of having their past and future tax refunds seized in payment of their federal student loan debts from Corinthian.

**Count Two: Administrative Procedure Act**

83. Plaintiffs repeat and reallege each of the foregoing paragraphs, as if fully set forth herein.

84. Plaintiffs seeks a determination that Defendant King violated the Administrative Procedure Act by making an improper final agency determination or, in the alternative, failing to make a required final agency determination that Plaintiffs' student loan debts were certifiable as legally enforceable for offset.

85. The Secretary of Education's certifications of Plaintiffs' debts for tax refund offset were required to include final agency determinations that the debts, in the amount stated, were due, and that there were no legal bars to collection by offset.

86. In light of the clear evidence of wrongdoing by Corinthian and Everest Chelsea in the Department of Education's possession and the legal bar to enforcement created by this misconduct, the Secretary of Education's final agency determination that Plaintiffs' student loan debts are legally enforceable is arbitrary and capricious, in violation of the Administrative Procedure Act.

87. In the alternative, Defendant King's failure to make the required final agency determinations prior to certifying Plaintiffs' debts for offset is unlawful and in violation of his statutory duties and the Administrative Procedure Act.

88. In light of the clear evidence of wrongdoing by Corinthian and Everest Chelsea in the Department of Treasury's possession and the legal bar to enforcement created by this misconduct, Defendant Lew's acceptance of the certifications and recertifications of Plaintiffs' debts for offset, and offsets of Plaintiffs' refunds, are unlawful, in violation of the Administrative Procedure Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment and order for relief as follows:

A. Entering a declaratory judgment, pursuant to 28 U.S.C. § 2201, stating that Plaintiffs' student loan debts incurred from Everest Chelsea are not certifiable for tax refund offset;

B. Further declaring that the certification of student loan debts from Corinthian is unlawful under the Debt Collection Improvement Act;

C. Further declaring that offset by the Department of Treasury of such debts is unlawful under the Debt Collection Improvement Act;

D. Further declaring that the Department of Education is obligated to stop certifying and recertifying, and withdraw existing certifications of student loan debts from Corinthian;

E. Further declaring that the Department of Treasury is obligated to stop offsetting student loan debts from Corinthian;

F.  Striking the Department of Education's final determination or, in the alternative, failure to make a final determination, that Plaintiffs' debts are legally enforceable as arbitrary and capricious, unlawful, and/or short of a mandatory duty, in violation of the Administrative Procedure Act;

G.  Ordering ancillary relief under 28 U.S.C. § 2202, including refund of amounts already seized from Plaintiffs pursuant to the unlawful certification for offset;

H.  Ordering Defendants to pay the cost of this action, together with reasonable attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), as determined by the Court; and

I.  Granting such other and further relief as the Court may deem just and proper.

Dated: October 14, 2016

Respectfully submitted,

/s/ *Toby R. Merrill*
Toby R. Merrill
BBO No. 601071

/s/ *Deanne B. Loonin*
Deanne B. Loonin*
BBO No. 668231

/s/ *Alec P. Harris*
Alec P. Harris*
BBO No. 601127

On the Complaint: Eileen M. Connor

Legal Services Center of Harvard Law School
122 Boylston Street
Jamaica Plain, MA 02130
Phone: (617) 522-3003
Fax: (617) 522-0715

*Attorneys for Plaintiffs*

*Application for admission pending.

## Certificate of Service

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF.

Dated: October 14, 2016

                                             /s/ *Toby R. Merrill*
                                             Toby R. Merrill