**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS**

DARNELL E. WILLIAMS and YESSENIA
M. TAVERAS,

     *Plaintiffs*,

     v.

ELISABETH P. DEVOS, in her official
capacity as Secretary of the United States
Department of Education,

     *Defendant*.

Civil Action No. 16-11949-LTS

## MEMORANDUM IN SUPPORT OF MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD AND ORDER LIMITED DISCOVERY

Plaintiffs Darnell Williams and Yessenia Taveras filed this suit to challenge the

Defendant Secretary of Education's seizure of their federal tax refunds to pay their student loans.

By law, prior to certifying any debt to the U.S. Department of the Treasury for payment through

offset of tax refunds, the Secretary must make a determination that the debt is legally

enforceable. Plaintiffs assert that the Secretary could not properly have determined that these

debts were legally enforceable. At the time that the Secretary certified their debts, she had in her

possession extensive evidence that Plaintiffs' school, Everest Institute, committed widespread

misconduct sufficient to warrant cancellation of their loans. Additionally, she had in her

possession a request for loan cancellation submitted by the Attorney General of Massachusetts,

which specifically identified Plaintiffs as eligible for loan cancellation. Therefore, Plaintiffs

maintain, the Secretary's actions violate the Administrative Procedure Act, either because the

Secretary failed to make the required determination of legal enforceability, or because the determination was made in an arbitrary and capricious manner.

Plaintiffs pleaded their claim in the alternative[1] because they were not in a position to know whether and how the determination was made. They know only that their refunds were seized, and that the law requires this seizure to take place according to a specified process. The administrative record filed by the Secretary suggests that no determination of legal enforceability was made because it contains no information about when, whether, or how such determination was made. Additionally, the record does not include the defense to repayment application submitted on behalf of Plaintiffs by the Massachusetts Attorney General's Office, which details extensive violations of Massachusetts law by Everest Institute. This application, and the evidence submitted in support of it, is directly relevant to the determination the Secretary was required to make. To clarify these issues, Plaintiffs respectfully request that the Court (1) supplement the record with the Massachusetts Attorney General's defense to repayment application and (2) permit Plaintiffs to conduct limited discovery, in the form of depositions, to provide information not currently included in or apparent from the certified record.

## BACKGROUND

*1. Procedural History*

In 2016, the U.S. Department of Education ("Education") and the Defendant Secretary of Education ("Secretary") effectuated the seizure of the federal tax refunds of Plaintiffs Darnell Williams and Yessenia Taveras to service the federal student loans they incurred attending

---

[1] *See* First Amended Complaint, Doc. No. 5 at 15 (raising claim under Administrative Procedure Act that final determination that Plaintiffs' student loan debts are legally enforceable was arbitrary and capricious), 16 (stating alternative claim under Administrative Procedure Act that Defendant's failure to make the required final agency determination of legal enforceability was unlawful and in violation of statutory duties).

Everest Institute in Chelsea, Massachusetts ("Everest"), a school owned and operated by Corinthian Colleges, Inc. ("Corinthian").

Before seizing Plaintiffs' tax refunds using the Treasury Offset Program ("TOP"), the Secretary was required by law to determine that Plaintiffs' student loan debts were "legally enforceable" and certify them as such in writing to the U.S. Department of the Treasury ("Treasury"). 31 C.F.R. § 285.5(d)(3)(i)(B), (d)(6)(i). "Legally enforceable" means there has been a "final agency determination" that "there are no legal bars to collection" of the debt. 31 C.F.R. § 285.5(b).

At the time the Secretary referred Plaintiffs' debts for TOP, she possessed extensive evidence that the debts did not satisfy the standard for legal enforceability. Corinthian and Everest ceased operations and have been found by Education and multiple law enforcement agencies to have engaged in systematic and widespread misrepresentation and deception. Doc. No. 5 at 6–10. The Secretary also possessed a defense to repayment application submitted by the Massachusetts Attorney General's Office ("AGO") demanding cancellation of the federal student loans of all borrowers who attended Everest campuses in Massachusetts between 2007 and 2015. *Id.* at 9. This application included a 60-page memorandum ("DTR Application") accompanied by over 2700 pages of documentation. *Id.*; Doc. No. 29 at 3. These materials explained the legal basis for loan cancellation, provided extensive supporting evidence, and specifically named Plaintiffs as borrowers whose loans should be cancelled. Doc. No. 5 at 9; *see also* Doc. No. 29 (addressing contents of application in detail).

Plaintiffs brought this suit under the Declaratory Judgment Act and Administrative Procedure Act ("APA") to hold unlawful the Secretary's determination (or failure to determine) that their loans are certifiable as legally enforceable debt, in light of the extensive evidence to the

contrary in the Secretary's possession at the time of offset. Doc. No. 5 at 14–16. They seek a declaration that their federal student loans were not and are not certifiable for TOP. *Id.* at 16–17.

    *2.  The Administrative Record*

    After litigating a motion to dismiss, the parties conferred extensively about the contents of the administrative record in this case. *See* Doc. Nos. 34, 38. Two ongoing areas of disagreement arose, including whether the AGO's DTR Application and supporting materials should be included in the record and whether additional explanatory materials about the certification of Plaintiffs' debts for offset should be added to the record. Doc. No. 38 at 2. Defendant produced the DTR Application—but not the accompanying materials—pursuant to a court order, Doc. No. 39, and protective order, Doc. No. 40. Ultimately, the parties agreed to "file the record to the extent agreed upon, first, and ask the Court to resolve any outstanding areas of dispute once the record is before it." Doc. No. 38 at 3.

    On November 17, 2017, Defendant filed the administrative record. Doc. No. 43. The filed record consists primarily of printouts from various databases concerning the origination and servicing of Plaintiffs' loans. *See generally id.* These printouts contain large quantities of highly technical, unexplained information. *See, e.g.*, Doc. No. 43-2 at 17 (listing transactions by unexplained codes); Doc. No. 43-12 at 36 (reproducing email stating that an "update file" was "processed by TOP," without explanation of this fact or the other data included, such as "cycle number" and "block size"). The record includes some information indicating that Plaintiffs' loans were seized by TOP, *see, e.g.*, Doc. No. 43-12 at 29–31; Doc. No. 43-19 at 29–31, but does not include the requisite written certification that the debts are legally enforceable required for Treasury to seize tax refunds, *see* 31 C.F.R. § 285.5(d)(6).

    The record includes no administrative findings of fact or other information indicating whether, how, or when the Secretary made a determination that Plaintiffs' loans are legally

enforceable. In fact, the record is completely bereft of information concerning any administrative decision-making with respect to Plaintiffs' loans with the sole exception of two memoranda between Education and an entity known as "Maximus" regarding "Selection Criteria for 2016 TOP Certification Processing," Doc. No. 43-12 at 33; Doc. No. 43-19 at 33, and "Selection Criteria for 2017 TOP Recertification Processing," Doc. No. 43-12 at 37. These memoranda list criteria for selecting accounts for TOP but they do not shed any light on if or how these criteria were applied to Plaintiffs. *See id.* Notably, the memoranda include an "Unenforceable Debt Exclusion," which provides that "[d]ebts that are considered unenforceable . . . must be excluded from selection," as well as a "Discharge Process Exclusion," which states that "[a]ny debt currently being evaluated under, or already deemed eligible for, the various discharge processes . . . must be excluded from selection." Doc. No. 43-12 at 34, 38; Doc. No. 43-19 at 34. The record does not explain how or why the Secretary certified Plaintiffs' debts for TOP, notwithstanding these seemingly applicable exclusions.

Also lacking from the record is the evidence, discussed above, that the Secretary had in her possession about Everest's misconduct. This evidence included the DTR Application and the Secretary's own investigation of Everest and Corinthian. The Secretary appears to have credited much of this evidence, because she announced on March 25, 2016—before the seizure of Plaintiffs' debts took place—that the school's misconduct made its students presumptively eligible for loan discharge. Doc. No. 5 at 9. Yet the record suggests that the Secretary completely disregarded all of this evidence when determining the enforceability of Plaintiffs' loans and proceeding with TOP.

## ARGUMENT

The administrative record certified by the Defendant in this case should be supplemented to include all relevant information before the Secretary at the time of her challenged actions and

to fully explain the agency action subject to judicial review. Plaintiffs respectfully request that the Court supplement the record to include the DTR Application and permit limited discovery to explain the Secretary's actions.

**I.      The Court should supplement the record with the AGO's DTR Application.**

The Court should supplement the administrative record in this case to include the DTR Application because it is pertinent but unfavorable information that was excluded from the record. The focus of APA review is the "full administrative record that was before the Secretary at the time [she] made [her] decision." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *overturned on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977). The administrative record "'should include all materials that might have influenced the agency's decision, and not merely those on which the agency relied in its final decision.'" *Maine v. McCarthy*, No. 1:14-CV-00264-JDL, 2016 WL 6838221, at *1 (D. Me. Nov. 18, 2016) (quoting *Amfac Resorts, LLC v. U.S. Dept. of the Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001)); *accord City of Duluth v. Jewell*, 968 F. Supp. 2d 281, 288 (D.D.C. 2013).

Although the agency designates the record in the first instance, "the law affords an agency merely a rebuttable presumption that it properly designated an accurate and complete administrative record." *Cty. of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64, 72 (D.D.C. 2008) (citing *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 197 (D.D.C. 2005)). Courts supplement the record in an APA case where the agency has skewed the administrative record in its favor by "excluding pertinent but unfavorable information." *McCarthy*, 2016 WL 6838221 at *2 (citing *Fund for Animals*, 391 F. Supp. 2d at 197); *Boston Redev. Auth. v. Nat'l Park Serv.*, 125 F. Supp. 3d 325, 330 (D. Mass. 2015), *aff'd*, 838 F.3d 42 (1st Cir. 2016). Supplementation is warranted upon a showing "that the agency either intentionally or negligently excluded from the record evidence adverse to its position," *McCarthy*, 2016 WL 6838221 at *2, because the record

does not contain documents (1) known to the agency at the time it made its decision that are (2) related and adverse to that decision. *Fund for Animals*, 391 F. Supp. 2d at 198.

The DTR Application should be part of the record because it was known to the Defendant and related to her decision. First, it is "axiomatic" that documents that are in a defendant agency's files are "known" to the agency, especially if they are submitted to the agency by third parties. *Kempthorne*, 587 F. Supp. 2d at 76. In this case, the AGO submitted its DTR Application to the Secretary before the Secretary referred Plaintiffs' debts for TOP. *See* Doc. No. 19-1 at 4–5; Doc. No. 5 at 9. Moreover, the Defendant's records show that the Secretary possessed the DTR Application for a full five months before offset of Plaintiffs' refunds occurred in April and May of 2016. *See* Doc. No. 19-1 at 4–5; Doc. No. 43-12 at 31; Doc. No. 43-19 at 31. This fact is relevant because even after making the initial determination of legal enforceability and subsequently certifying the debt for TOP, the Secretary was required to inform Treasury "immediately of any change in the status of the legal enforceability of the debt." 31 C.F.R. § 285.5(d)(10)(iv); *accord* 31 C.F.R. § 285.2(d)(4).

Second, the DTR Application was clearly relevant and adverse to the Defendant's decision to collect Plaintiffs' debts using TOP, and to the predicate determination that the debts were "legally enforceable." 31 U.S.C. §§ 3716(c)(6)(A), 3720A(b)(3); 31 C.F.R. § 285.5(d)(3)(i)(B), (d)(6)(i). In the context of TOP, legally enforceable "refers to a characteristic of a debt and means that there has been a final agency determination that the debt, in the amount stated, is due, and there are no legal bars to collection by offset." 31 C.F.R. § 285.5(b). In applying the TOP regulations, courts have concluded that "[i]n its most basic sense, 'legally enforceable' means that a party could go to court and obtain a judgment on the debt." *Ingram v. Cuomo*, 51 F. Supp. 2d 667, 672 (M.D.N.C. 1999) (quoting *Hurst v. United States Dep't of*

*Educ.*, 695 F. Supp. 1137, 1139 (D. Kan. 1988) *aff'd*, 901 F.2d 836 (10th Cir. 1990)) (internal quotation marks omitted). The administrative record designated by the agency indicates that debts should be excluded from referral for TOP when, *inter alia*, they are "considered unenforceable, without merit, unsubstantiated or suspended," ("Unenforceable Debt Exclusion"), or are "being evaluated under, or have been deemed eligible for, the various discharge processes," ("Discharge Process Exclusion"). Doc. No. 43-12 at 34, 38; Doc. No. 43-19 at 34. The DTR Application implicates both of these exclusions.

The DTR Application was relevant and adverse to any determination of legal enforceability, as well as the Secretary's certification, because the Application directly attacks the legal enforceability of Plaintiffs' loans, both as an application for loan cancellation and as a legal and evidentiary document demonstrating Plaintiffs' state-law claims against collection. The Secretary has skewed the administrative record in her favor by excluding this pertinent but unfavorable information.

## II.    The Court should permit limited discovery to supplement the record.

The Court should permit limited discovery in this case—in the form of one or more depositions—to supplement the record. Additional factfinding is appropriate in an APA case if the record "fail[s] to explain administrative action," *Camp v. Pitts*, 411 U.S. 138, 142–143 (1973); *see also Boston Redev. Auth. v. Nat'l Park Serv.*, 838 F.3d 42, 48 (1st Cir. 2016) (stating that additional discovery is appropriate where "the complaining party has insinuated . . . that the administrative record is incomplete"); *Valley Citizens for a Safe Env't v. Aldridge*, 886 F.2d 458, 460 (1st Cir. 1989) (Breyer, J.) (noting that "[t]he fact that review sometimes or often focuses on the initial administrative record does not mean it must, or always, will do so" and that "a reviewing court might . . . ask for additional factual evidence as an aid to understanding").

Additional factfinding in an APA case is especially appropriate where, as here, an agency has engaged in informal adjudication but failed to explain its action with findings of fact or a reasoned decision. *Camp,* 411 U.S. at 142–43. For instance, in *Citizens to Preserve Overton Park, Inc., v. Volpe*, the Supreme Court reviewed a decision by the Department of Transportation to fund a federal highway through a public park, despite a statutory mandate to avoid doing so if "feasible and prudent." 401 U.S. at 405. The agency's determination did not include "a statement of the Secretary's factual findings . . . [and] [h]e did not indicate why he believed there were no feasible and prudent alternatives." *Id.* at 408. Faced with a "bare record [that] may not disclose the factors that were considered or the Secretary's construction of the evidence," the Court concluded that additional factfinding was appropriate and authorized the lower court on remand to require either "examination of the decisionmakers themselves" or "prepar[ation] [of] formal findings." *Id.* at 420. Subsequently, in *Camp v. Pitts*, the Supreme Court reiterated this conclusion, explaining that the remedy for a record that fails to explain administrative action is "to obtain from the agency, either through affidavits or testimony, such additional explanation of the reasons for the agency decision as may prove necessary." 411 U.S. at 143.

The Court should permit limited discovery in this case because the administrative record entirely fails to explain the challenged agency action. As in *Overton Park*, here the record contains no factual findings and no explanation of the Secretary's decision to refer Plaintiffs' debts for TOP. Indeed, the record contains no evidence that the Secretary followed the mandated procedures for TOP, which require a determination of legal enforceability and a written certification of enforceability to Treasury. 31 C.F.R. § 285.5(d)(6). The record contains no findings or analysis regarding the decision to certify Plaintiffs loans for TOP. It does not contain any written certification from Education to Treasury that Plaintiffs debts are legally enforceable,

as is required by the regulations governing TOP. In this regard, the record contains only emails from Treasury to Education which refer to "update files" for TOP and which do not mention Plaintiffs. Doc. No. 43-12 at 36, 40; Doc. No. 43-19 at 36.

Moreover, the minimal information about the Secretary's TOP processing that does appear in the record as designated supports Plaintiffs' claims that their debts are not legally enforceable and should not have been certified. First, memoranda in the record set forth an "Unenforceable Debt Exclusion," which provides that "[d]ebts that are considered unenforceable . . . must be excluded from selection." Doc. No. 43-12 at 34, 38; Doc. No. 43-19 at 34. It is not clear why the Secretary did not apply this exclusion to Plaintiffs' debts. Second, the memoranda include a "Discharge Process Exclusion," which states that "[a]ny debt currently being evaluated under, or already deemed eligible for, the various discharge processes . . . must be excluded from selection." Doc. No. 43-12 at 34, 38; Doc. No. 43-19 at 34. In light of the AGO's DTR Application, it is not clear why the Secretary did not apply this exclusion. Third, the 2017 recertification memorandum states that "[a]ny account in active litigation must be excluded from selection." Doc. No. 43-12 at 38. Yet in spite of the fact that Plaintiff Williams's account was the subject of active litigation, he was recertified for TOP on December 5, 2016. *See* Doc. No. 43-12 at 30. Further factual development will enable the Court to examine these apparent improprieties.[2]

---

[2] Although further factual development will provide "an aid to understanding," *Aldridge*, 886 F.2d at 460, it is not strictly necessary to facilitate judicial review, to the extent that the record could be read to establish that the required determination of legal enforceability did not in fact take place.

To rectify the record's limitations, the Court should order limited discovery, in the form of depositions of agency officials. Depositions would allow Plaintiffs, and thus the Court, to "obtain from the agency . . . through . . . testimony, such additional explanation of the reasons for the agency decision" that will facilitate judicial review. *Camp*, 411 U.S. at 143; *see also Olsen v. United States*, 414 F.3d 144, 155 (1st Cir. 2005) (stating that the administrative record of an informal adjudication facilitates judicial review if it "reflect[s] the actions, contentions, and *reasoning* of those involved" (emphasis added)). Plaintiffs respectfully request depositions to address the following topics, which are currently not addressed by the record:

1) The processes by which the Secretary determines debts to be legally enforceable, certifies the debts for TOP, and subsequently refers the debts for TOP;

2) How the Secretary performed these processes in Plaintiffs' cases;

3) How the documents in the record evidence that agency action in Plaintiffs' cases;

4) Whether the Secretary made a determination of legal enforceability prior to certifying Plaintiffs' debts for TOP;

5) How any determination of legal enforceability was made in Plaintiffs' cases, including the evidentiary basis and reasons for the decision;

6) Whether and in what way the Secretary considered the DTR Application in any determination of legal enforceability related to Plaintiffs;

7) Whether and in what way the Secretary considered her own findings regarding Everest's misconduct in any determination of legal enforceability related to Plaintiffs;

8) What role Maximus played in the TOP processes described above; and

9) How the Secretary and/or Maximus applied the TOP processing memoranda included in the record.

The administrative record should be supplemented with deposition testimony on these topics. *See Sierra Club v. Marsh*, 976 F.2d 763, 772 (1st Cir. 1992) ("The administrative record may be supplemented, if necessary, by affidavits, depositions, or other proof of an explanatory nature." (internal quotation omitted)). Plaintiffs also respectfully request the ability to seek additional discovery after depositions are completed if needed to address the topics above in a manner that will facilitate judicial review.

## CONCLUSION

For the foregoing reasons, the Court should supplement the record with the DTR Application and order limited discovery, in the form of depositions, to further supplement the record.

Respectfully submitted,

By: */s/ Alec P. Harris*
Alec P. Harris, BBO No. 601127
Eileen M. Connor, BBO No. 569184*
Toby R. Merrill, BBO No. 601071
Deanne B. Loonin, BBO No. 668231
LEGAL SERVICES CENTER OF HARVARD
LAW SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
(617) 522-3003
*Attorneys for Plaintiffs*

* *Admission pending*

Luke Dowling, law student on the motion

Dated: December 1, 2017

## CERTIFICATE OF SERVICE

I, Alec Harris, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants by First Class Mail.

*/s/ Alec P. Harris*
Alec P. Harris

Dated: December 1, 2017