# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DARNELL E. WILLIAMS and YESSENIA M. TAVERAS,<br><br>Plaintiffs,<br><br>v.<br><br>ELISABETH DEVOS in her official capacity as Secretary of the United States Department of Education,<br><br>Defendant. | Civil Action No. 16-11949-LTS |

## MEMORANDUM IN SUPPORT OF MOTION BY THE COMMONWEALTH OF MASSACHUSETTS TO COMPEL COMPLIANCE WITH THIS COURT'S ORDER OR, IN THE ALTERNATIVE, TO INTERVENE

The Commonwealth of Massachusetts (the "Commonwealth"), by and through the Office of Attorney General Maura Healey, submits this memorandum of law in support of its motion to compel compliance with the Court's Order in this matter, Dkt. No. 99 (the "Order"), pursuant to Federal Rules of Civil Procedure 71, or, in the alternative, to intervene pursuant to Federal Rules Civil Procedure 24 as a plaintiff-intervenor in this action.

At center in this case is the defense to repayment application submitted by the Attorney General Healey to the Secretary of Education (the "Secretary") dated November 30, 2015, laying out clear and convincing evidence that establishes widespread fraud committed by Corinthian Colleges, Inc. ("Corinthian") against Massachusetts students (the "DTR"). The DTR requested federal loan discharges for 7,200 students listed on Exhibit 4 ("Exhibit 4") as permitted under federal law and the terms of the loans themselves. Dkt. No. 47-1. Plaintiffs asserted, and

1

Defendant disputed, that the DTR is sufficient to invoke a borrower defense to repayment on behalf of the people listed in Exhibit 4. The Court squarely addressed the dispute as follows in the Order's conclusion:

> the Court determines that the DTR invoked a borrower defense proceeding on behalf of the people listed on Exhibit 4, including Williams and Taveras; that such a request was within Attorney General Healey's authority to make; that such a request was not precluded by federal regulations, even in the absence of an attachment of a personal request emanating from each individual borrower; and that certification, without consideration of Attorney General Healey's DTR submission, was arbitrary and capricious.

Dkt. No.99 at 29. Nevertheless, and contrary to the Order, the Secretary continues to maintain that the DTR did not invoke a borrower defense on behalf of the people listed in Exhibit 4, other than the two named Plaintiffs. The Commonwealth brings this motion to enforce full compliance with the Order.

## **BACKGROUND**

This case arose out of the massive fraud at Corinthian, including the Everest Institute in Massachusetts. The Commonwealth filed suit against Corinthian in Massachusetts Superior Court against Corinthian in early 2014 after a thorough investigation. Dkt. No. 47-1 at 2. In November 2015, Attorney General Healey sent substantial evidence demonstrating Corinthian's fraud to the Secretary in the DTR, together with a request for loan discharges for affected Massachusetts borrowers. In support of her request, Attorney General Healey provided thousands of pages of evidence that Corinthian repeatedly inflated its placement rates, lied to prospective students about these rates, rushed and pressured students into uniformed and ill-advised enrollment decisions, and failed to provide the quality education promised, among other unfair and deceptive acts and practices. Dkt. No. 47-1. Attorney General Healey also submitted identifying information about 7,200 Corinthian students in Exhibit 4. *Id.* In 2016, the

Commonwealth obtained a final judgment against Corinthian in which the Massachusetts Superior Court ordered restitution in the amount of $67,333,019—an amount equal to all funds Corinthian acquired from graduates who enrolled between July 1, 2006 through June 30, 2014. Dkt. No. 29-1 at 2, 10.

Plaintiffs Williams and Tavares were among the thousands of defrauded students listed in Exhibit 4. Dkt. No. 29-1 at 12. In 2014, Plaintiffs defaulted on their student loans. AR at 488–89, 814–15. In December 2015, the Department of Education (the "Department") certified Plaintiffs' student loan debts as legally enforceable for purposes of referral to the U.S. Department of the Treasury's Treasury Offset Program ("TOP"). The Department made this certification notwithstanding the considerable evidence it had received from Attorney General Healey as well as other information in its possession at that time and without considering the DTR. Dkt. No. 55 ¶¶ 11–14. In April and May 2016, the Department seized Plaintiffs' tax refunds. AR at 532, 818–19.

On September 28, 2016, Plaintiffs brought this lawsuit alleging the Secretary improperly certified Plaintiffs' student loan debts as legally enforceable for purposes of referral to the TOP. In January 2017, the Secretary moved to dismiss Plaintiffs' action. Dkt. Nos. 18, 19. Plaintiffs opposed, Dkt. No. 22, and the Commonwealth filed an amicus brief in support of the opposition, Dkt. No. 29. The Court allowed the motion to the extent the Amended Complaint, Dkt. No 5, sought injunction relief or relief on behalf of persons other than Williams and Taveras. Dkt. No. 35. In granting this portion of the motion to dismiss, the Court noted that it "renders the first portion of its ruling in light of the presumption that the defendant, a public official, will act in good faith and comply with governing law as declared by the Court." *Id.* The Court denied the motion to dismiss in all other respects. *Id.*

On October 24, 2018, this Court entered the Order after hearing Plaintiffs' and Defendant's cross-motions for relief regarding involuntary collection actions. Among other things, the Court concluded that the DTR had invoked a borrower defense proceeding on behalf of each borrower listed in Exhibit 4. Dkt. No. 99 at 29. The Court ordered the Secretary to take certain specific steps, including report on the status and timing of her decision with respect to Plaintiffs borrower defense applications within sixty days. *Id.* at 29–30.

On November 28, 2018, counsel for the Commonwealth wrote to the Secretary seeking confirmation that the Department intended to fully comply with the Court's order and cease involuntary collections against all borrowers listed in Exhibit 4 at least until it had rendered a decision on the DTR. *See* First AG Letter, attached as Ex. A. On December 12, 2018, counsel for the Secretary responded as follows: "Secretary intends to comply with the letter of the Court's Order and, accordingly, will describe her compliance efforts in a status report filed with the court on or before December 24, 2018." *See* First Secretary DeVos Letter, attached as Ex. B. Counsel did not respond to the Commonwealth's request that the Department confirm it intended to cease involuntary collections against all borrowers listed in Exhibit 4 at least until it had rendered a decision on the DTR. *Id.*

On December 20, 2018, the Secretary filed a status report outlining her compliance with the Court's order. Dkt. No. 101. In this, the Secretary noted that "[e]ffective December 10, 2018, each account referred to TOP is checked weekly to verify whether a borrower defense application has been filed. If such application has been filed, the account will be removed from TOP and put into forbearance or stopped collection status," *id.* ¶ 6, but did not describe what the Secretary considered a borrower defense application. The Status Report, together with the Secretary's December 12, 2018 letter, created ambiguity about the Department's compliance

4

with the Order, specifically about whether it was treating the DTR as a borrower defense application. The federal government then shut down between December 22, 2018 and January 25, 2019, and the case did not proceed during this time period.

On February 14, 2019, counsel for the Commonwealth sent a letter confirming its understanding that the Secretary was not treating the DTR as a defense to repayment application by each borrower listed in Exhibit 4 for purposes of involuntary collection and asked the Secretary to let it know if its understanding of her position was incorrect. *See* Second AG Letter, attached as Ex. C. Counsel for the Secretary responded on February 20, 2019, as follows: "the Secretary does not interpret the Court's October 24, 2018 Order (ECF No. 99) in the above-captioned action as requiring the Department of Education to take any action with respect to any individuals other than the two named Plaintiffs in this matter." *See* Second DeVos Letter, attached as Ex. D.

While the Commonwealth was conferring with Plaintiffs and Defendant about this motion and waiting for Defendant's position, the parties filed a joint notice of settlement in principal. *See* Dkt. No. 112. The notice states that the "parties require additional time to finalize the terms of the settlement and execute a settlement agreement." *Id.* In other words, no settlement has been finalized. As discussed below, this notice of settlement in principal demonstrates the clear need for the Commonwealth to enforce or intervene to protect the interests of the other 7,200 borrowers listed in Exhibit 4.

## ARGUMENT

The Secretary is not complying with the Order and is instead ignoring the Court's clear conclusion that the DTR is a borrower defense claim on behalf of the borrowers listed in Exhibit 4. This Court should compel compliance to the Order, either by granting the Commonwealth's

5

motion to enforce as a non-party pursuant to Rule 71 or its motion to intervene. As discussed below, the Court has ample authority to compel full compliance with respect to all borrowers listed in Exhibit 4, not just the two named Plaintiffs.

I. **THE COMMONWEALTH IS ENTITLED TO COMPEL THE SECRETARY TO COMPLY WITH THE ORDER PURSUANT TO RULE 71**

The Court should compel the Department to comply with its Order because (i) the Commonwealth can enforce the Order pursuant to Federal Rule of Civil Procedure 71; and (ii) the record establishes that the Department is not in compliance with the Order.

    A.    **The Commonwealth Can Enforce the Order**

Federal Rule of Civil Procedure 71 states in full that "[w]hen an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party." Rule 71, which has been in place in essentially identical form since 1937,[1] was drafted for situations exactly like this one, where a court's order has been made to the benefit of a nonparty. *See*, *e.g.*, *Judicial Watch Inc. v. United States Dep't of Commerce*, 34 F. Supp. 2d 28, 43 (D.C Cir. 1998) ("'It seems clear that Rule 71 was intended to assure that process be made available to enforce court orders in favor of and against persons who are properly affected by them, even if they are not parties to the action.'") (quoting *Lasky v. Quinlan*, 558 F.2d 1133, 1137 (2d Cir. 1977)); *see also* 12 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 3032 (3d ed. 2018) (describing in what circumstances a non-party can bring an action under Rule 71). This means that a nonparty granted relief in an order may enforce obedience by a motion to compel. *Brennan v. Nassau County*, 352 F.3d 60, 65 (2d Cir. 2003) (citation omitted).

---

[1] It was amended in 1987 to make technical adjustments and again in 2007 to make further stylistic changes. Neither amendment was intended to change the substance of Rule 71. *See* Fed.R.Civ.P. 71, Advisory Committee Notes.

Here the Commonwealth seeks to compel consideration of the DTR, the very subject of the Order. The Court specifically noted that the DTR required the Secretary to render a decision on the merits of the two named Plaintiffs, and broadly stated that the DTR invoked a borrower defense proceeding on behalf of *all borrowers* included in Exhibit 4. In addition, the Order clearly grants the Commonwealth relief, as it provides that the DTR invoked a borrower defense proceeding, was within the Attorney General's authority to make, and required consideration before the Department certified borrower debt for collection. Dkt. No. 99 at 29.

In similar circumstances, courts have allowed nonparties to enforce consent decrees, judgments, or other orders to vindicate their rights. For instance, in *Berger v. Heckler*, 771 F.2d 1556 (2d Cir. 1985), the court entered a consent decree directing the Secretary of Health and Human Services to make Social Security payments to certain immigrants. The consent decree provided a particular construction of the Supplemental Security Income (SSI) eligibility provision, which benefited other unnamed applicants. The Second Circuit determined that these unnamed but similarly situated individuals were permitted to intervene and seek to have the Secretary held in contempt pursuant to Rule 71 when the Secretary did not comply with the consent decree. *Id.* at 1565. Similarly, in *California Dept. of Social Services v. Leavitt*, 444 F. Supp. 2d 1088 (E.D. Cal. 2006), *judgment aff'd in part, rev'd in part*, 523 F.3d 1025 (9th Cir. 2008), the court held that foster families, though nonparties, could move pursuant to Rule 71 to enforce a prior judgment ordering retroactive payment of welfare benefits. These foster families had foster care cases open after the court ordered the state Department of Social Services to review all open foster care cases for determination of welfare eligibility in accordance with the judgment. *Id.* at 1098.

Rule 71 is designed for these precise circumstances, when a court order has been entered providing the nonparty the relief it seeks and nothing remains but enforcement. It is particularly true here, where the parties have filed notice of settlement and Plaintiffs presumably will no longer seek relief under the Order. If the Commonwealth is not able to enforce the Order pursuant to Rule 71 or otherwise intervene, it will have to file an independent action to re-litigate matters already decided by the Court. Such an action would be duplicative and a waste of judicial resources.

### B. The Secretary is Not Complying with the Order

Because the Secretary is not complying with the Order, enforcement by the Commonwealth under Rule 71 is warranted. The Court concluded that the DTR submission "invoked the administrative remedy of Education's review process such that Education was required to adjudicate the request." Dkt. No. 99 at 20. In order to "comply with governing law as declared by the Court," Dkt. No. 35, the Secretary must, at a minimum, ensure that each individual listed in Exhibit 4 does not have an account certified for collection through Treasury Offset.

Both explicit and implicit in the remedy ordered by the Court is the conclusion that the DTR invokes a borrower defense proceeding on behalf of all the people listed in Exhibit 4. The Court explicitly concluded that the DTR invoked a borrower defense proceeding on behalf of all of these individuals. Dkt. No. 99 at 29. Beyond that, the Court's conclusion that "Attorney General Healey's letter, Dkt. No. 47-1, required the Secretary to render a decision on the merits of Williams and Taveras's borrower defenses" in turn means that a decision must be rendered by all affected Corinthian students. *Id.* at 30. Neither Plaintiff is identified uniquely in any way in the DTR. They are similarly situated to the other 7,200 individuals listed in Exhibit 4. In fact,

8

they are not even among those students who submitted individualized borrower defense claims in connection with the DTR. Thus, there is no way to differentiate Plaintiffs from the other individuals listed in Exhibit 4. In other words, consideration of the DTR for Plaintiffs is consideration of the DTR for all former Corinthian students listed in Exhibit 4. As the court noted in *Feld v. Berger*, 424 F. Supp. 1356 (S.D.N.Y.1976), while concluding that class certification was unnecessary where plaintiffs sought injunctive and declarative relief against certain practices,

> The defendants are public officials charged with compliance with and enforcement of federal as well as state laws. The Court assumes these public officials, mindful of their responsibilities, will apply the determination here made equally to all persons similarly situated. "[I]t would be unthinkable that the . . . defendants would insist on other actions being brought" to vindicate the same rights at issue here.

*Id.* at 1363 (footnote omitted) (quoting *Vulcan Soc'y v. Civil Serv. Comm'n,* 490 F.2d 387, 399 (2d Cir.1973)).

Nevertheless, the Department has implemented the Order only with respect to Mr. Williams and Ms. Tavares. Thus, it continues involuntary collections against borrowers identical in all respects with the named Plaintiffs here. The Department's cramped interpretation of the Order is incorrect and it must be compelled to comply.

## II. IN THE ALTERNATIVE, THE COMMONWEALTH IS ENTITLED TO INTERVENE IN THIS ACTION

Should the Court conclude that the Commonwealth is not entitled to relief pursuant to Rule 71, the Commonwealth alternatively requests intervention into this matter. The Commonwealth is entitled to intervene both as a matter of right and through the exercise of the Court's discretion for permissive intervention.[2]

---

[2] The Commonwealth notes it has not filed a proposed pleading along with its motion. The First Circuit has rejected a hyper-technical reading of Rule 24(c), which calls on putative intervenors to serve on the parties "a pleading that

### A. The Commonwealth Has a Right to Intervene

Federal Rule of Civil Procedure 24(a)(2) allows intervention as of right for any party that "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." The First Circuit applies the following four-factor test under the Rule: "a would-be intervenor must demonstrate that: (i) its motion is timely; (ii) it has an interest relating to the property or transaction that forms the foundation of the ongoing action; (iii) the disposition of the action threatens to impair or impede its ability to protect this Case; and (iv) no existing party adequately represents its interest." *Ungar v. Arafat*, 634 F.3d 46, 50 (1st Cir. 2011) (citation omitted). The Commonwealth satisfies each of these factors.

#### 1. The Commonwealth's motion is timely

The Commonwealth has moved in timely fashion to intervene. Timeliness, which "is of first importance," *United Nuclear Corp. v. Cannon*, 696 F.2d 141, 143 (1st Cir. 1982), is determined by considering "the totality of the relevant circumstances," *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1230 (1st Cir. 1992) (citations omitted). Post-judgment intervention is proper, and often permitted, where the prospective intervenor's interest does not arise until after a judgment is entered. *See Acree v. Republic of Iraq*, 370 F.3d 41, 50 (D.C. Cir. 2004), *abrogated on other grounds by Republic of Iraq v. Beaty,* 556 U.S. 848 (2009) (citing 7C

---

sets out the claim or defense for which intervention is sought." *See Peaje Invs. LLC v. García-Padilla*, 845 F.3d 505, 515 (1st Cir. 2017) (noting that "[s]everal circuits, including our own, have eschewed overly technical readings of Rule 24(c)" and concluding that "denial of a motion to intervene based solely on the movant's failure to attach a pleading, absent prejudice to any party, constitutes an abuse of discretion."). Where the intervenor does not attach a pleading, the Court "[relies] on facts made manifest in the record as a whole." *In re Efron*, 746 F.3d 30, 32 (1st Cir. 2014). The Commonwealth is seeking relief based on a prior order of this Court. The filing of an additional pleading, namely a separate complaint, does not make appear to make sense at this stage of the litigation.

Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 1916 (2d ed. 1986)).

The case law reflects four factors that inform the timeliness inquiry: "(i) the length of time that the putative intervenor knew or reasonably should have known that his interests were at risk before he moved to intervene; (ii) the prejudice to existing parties should intervention be allowed; (iii) the prejudice to the putative intervenor should intervention be denied; and (iv) any special circumstances militating for or against intervention." *R & G Mortgage v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 7 (1st Cir. 2009) (citation omitted).

The Commonwealth has moved promptly after learning its interests were at risk. The Commonwealth did not learn that the Secretary was not complying with the Order (or at least did consider herself bound to follow the Order with respect to anyone other than the two named Plaintiffs) until at least February 5. Subsequently, the Commonwealth wrote to confirm its understanding on February 14, 2019, and heard back from the Secretary on February 20, 2019. The Commonwealth has moved expeditiously while attempting to avoid utilization of the Court to resolve the dispute. Since the purpose of intervention relates specifically to compliance with the Order, timeliness should be gauged based on when the Commonwealth was able to ascertain the Secretary's non-compliance and unable to persuade the Secretary to change positions.

There is no prejudice to the other parties should intervention be allowed. Plaintiffs assent to the Commonwealth's motion and presumably see no prejudice to their position; in fact the Commonwealth's position is consistent with the relief that Plaintiffs have sought. There is no prejudice to Defendant either; all that the Commonwealth requests is that the Secretary comply with the Order and governing law as declared by the Court. It is difficult to argue that this could prejudice the Secretary. *See Feld*, 424 F.Supp. at 1363 ("[I]t would be unthinkable that the . . .

[public official] defendants would insist on other actions being brought to vindicate the same rights at issue here.") (internal quotation marks and citation omitted).

The Commonwealth would be prejudiced if intervention were not granted. As discussed in Section II.A.2 below, it has important interests in this action in vindicating its right to submit borrower defense to repayment claims and advocate on behalf of defrauded Massachusetts students. This is an important matter of public policy which is a special circumstance auguring in favor of intervention.

### 2. The Commonwealth has important interests in this action

The Commonwealth has sufficient interests in this action to justify intervention as of right. To satisfy this second requirement, the movant must identify an interest "relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). The interest must be "direct" and "significantly protectable," *Ungar*, 634 F.3d at 51 (*quoting Donaldson v. United States*, 400 U.S. 517, 531 (1971)), but it need not "be of a legal nature identical to that of claims asserted in the main action," *In re Lopez Soto*, 764 F.2d 23, 26 (1st Cir. 1985) (citation omitted).

Here, the Commonwealth has clear interests in this action. As discussed in detail in Section I.A above, the Court concluded that the DTR was a borrower defense submission made on behalf of each borrower listed in Exhibit 4, namely, every Massachusetts student defrauded by Corinthian. Thousands of these students live in the Commonwealth and are burdened by debts that impact their financial wellbeing and that of their families, in communities across Massachusetts. The Commonwealth also has a clear interest in the vindication of its authority through the Attorney General to submit borrower defenses to repayment, and to have such applications considered by the Department. Allowing the Department to escape its obligations to

12

properly consider the DTR would undermine the Commonwealth's ability to protect all consumers in Massachusetts from unfair and deceptive practices by predatory for-profit schools and to ensure a level playing field for the many high-quality institutions of higher education based in our state.

The Commonwealth anticipates that in opposition Defendant may refer to the dismissal of an earlier action in the District of Columbia, *Massachusetts, et al. v. U.S. Dep't of Education*, *et al.*, No. 17-CV-07106, Dkt. No. 30 (D.D.C. 2018), on standing grounds. This case differs greatly from the prior litigation; most notably, here the Commonwealth is seeking to enforce an existing Order and ensure recognition of its right through the Attorney General to submit borrower defense to repayment claims to the Department, and to have such applications considered by the Department. The Commonwealth seeks to vindicate a right that this Court has already concluded it has. By contrast, in the dismissed matter the Commonwealth and other states sought to challenge all collections against borrowers in cohorts where the Department had issued finding. *See id.*, Dkt. No. 21 at 30–31. It was a different case with a broader focus. The district court's conclusion there has no bearing on the issues before this Court. The Commonwealth's interest here could not be clearer.

### 3. The Commonwealth's interests will be impaired absent intervention.

The Commonwealth needs to intervene in order that its interests not be impaired. In addition to establishing a sufficient interest in the subject of the action, the proposed intervenor must demonstrate that disposition of that action may, as a practical matter, "impair[s] or impede[s] its ability to protect this interest." Fed. R. Civ. P. 24(a)(2). In determining whether this requirement is met, courts consider "the practical consequences of denying intervention." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (citation and internal

quotation omitted); *accord Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 110-11 (1st Cir. 1999) (holding that "'practical' test of adverse effect that governs under Rule 24(a)" was "easily satisfied" by showing that proposed intervenor's interests would be "adversely affected" if lawsuit were lost). In Massachusetts, the Attorney General has a broad statutory and common law mandate to represent the public interest. *Attorney General v. Dime Sav. Bank*, 413 Mass. 284, 287 (1992). An action by the Attorney General uniquely protects the interests of the Commonwealth in challenging the Secretary's actions. An adverse ruling in this litigation may create negative precedent concerning the Attorney General's ability to vindicate her right to have her submissions considered and to advance the interests of other defrauded borrowers harmed in Massachusetts.

### 4. Existing parties do not adequately represent the Commonwealth's interests.

Finally, no existing party adequately represents all of the Commonwealth's interests in this matter. The burden of showing that a proposed intervenor's interests will not be adequately represented by existing parties is a "minimal" one. *See Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); *Maine v. Director, U.S. Fish & Wildlife Serv.*, 262 F.3d 13, 18 (1st Cir. 2001). The intervenor "need only show that representation may be inadequate, not that it is inadequate." *Conservation Law Found. of N. Eng. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992) (citing *Trbovich*, 404 U.S. at 538 n.10). Here, the Commonwealth more than satisfies that minimal burden. Its interests are "sufficiently different in kind or degree from those" of Plaintiffs such that its interests cannot be represented. *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 546 (1st Cir. 2006) (citations omitted).

First, the Commonwealth has an interest in ensuring that the DTR be properly considered a borrower defense on behalf of all borrowers listed in Exhibit 4. In contrast, named Plaintiffs

have a specific interest in their own economic well-being and garnering their own relief. An outcome in this case that forgave Plaintiffs' debts but left thousands of other defrauded Massachusetts borrowers facing involuntary collection may well be in their interests but does not achieve the Commonwealth's interests here. The fact that the parties have filed a notice of settlement (although no final settlement has been reached), Dkt. No. 112, demonstrates all the more clearly that the Commonwealth's interests are not represented by the existing parties.

Second, the Commonwealth has sovereign interests that no other party could represent, including having the Attorney General's authority as chief law enforcer properly considered. *See*, *e.g.*, *Massachusetts v. E.P.A.*, 549 U.S. 497, 520 (2007) (state interests are entitled to "special solicitude"). As the Court noted in its Order, "Attorney General Healey stands in very different shoes than a private lawyer seeking relief on behalf of a class of individuals whose interests the private lawyer does not, by virtue of public office, routinely and presumptively represent . . . ." Dkt. No. 99 at 23.

Consequently, no existing party can be expected to adequately represent the Commonwealth's specific interests in this matter.

**B.     The Court Should Exercise its Discretion to Grant Permissive Intervention**

Even if the Court concludes that the Commonwealth does not meet the standard for intervention as of right, it should nevertheless exercise its discretion to permit the Commonwealth to intervene in this litigation. *See*, *e.g.*, *Morra v. Casey*, 960 F. Supp. 2d 335, 338 (D. Mass. 2013) (concluding that while proposed intervenor was not entitled to intervene as of right, "[n]evertheless, the court may allow [the proposed intervenor] to intervene under Rule 24(b)(2)"). Permissive intervention is appropriate where a party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Courts have "broad discretion" in deciding whether or not to grant permissive intervention under

Rule 24(b). *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 641 (1st Cir. 1989). The First Circuit has articulated three factors to be considered in determining whether permissive intervention is warranted, including whether: "(i) the applicant's claim or defense and the main action have a question of law or fact in common; (ii) the applicant's interests are not adequately represented by an existing party; and (iii) intervention would not result in undue delay or prejudice to the original parties." *In re Thompson*, 965 F.2d 1136, 1142 n.10 (1st Cir. 1992) (citation omitted). For the reasons discussed above, the Commonwealth satisfies all three of these considerations. The Commonwealth's claim directly follows from the Order in the main action. Further, the Commonwealth's interests are broadly implicated by the Secretary's refusal to consider the DTR, and those interests are not adequately represented by the individual plaintiffs who look (naturally) to their own best interests. Finally, allowing the Commonwealth to intervene would not delay any aspect of this proceeding nor cause any prejudice to the existing parties because the Commonwealth seeks only to enforce the existing Order and/or ensure compliance with governing law as declared by this Court. In fact, Plaintiffs have assented to the motion, showing they see no prejudice.

> **C. The Commonwealth Moves to Intervene to Enforce Compliance with the Order and Governing Law as Declared by the Court**

The Commonwealth's position is that the Order is clear and that it covers all Massachusetts borrowers listed in Exhibit 4 to the DTR. But even if the Court concludes otherwise, it has the authority to (and should) amend the Order to cover all of these borrowers and ensure compliance with governing law.

As discussed above, while granting a portion of the motion to dismiss relating to Plaintiffs' request for injunctive relief or relief on behalf of persons other than Williams and Taveras, the Court noted that it "renders the first portion of its ruling in light of the presumption

16

that the defendant, a public official, will act in good faith and comply with governing law as declared by the Court." Dkt. No. 35. It is clear that the Secretary is not doing so, or at very least does not consider herself bound to do so, and has made no assurances that it will comply with governing law.

This set of circumstances is not unprecedented, and this Court has ample discretion to ensure compliance with governing law in addition to simply ordering compliance with the Order. *See* 7A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 1785.2 (3d ed. 2018) ("In some of these cases the assumption that [government] defendants would readily comply with respect to all affected persons proved unfounded. This resulted in renewed litigation, with class certification then being allowed because the need to bind defendant to a judgment on behalf of the entire class was apparent"). While in some of the cases discussed below, the courts responded to non-compliance (or the risk of non-compliance) with governing law by granting class certification, this Court can achieve the same result by granting the Commonwealth's motion to intervene and clarifying for the Secretary that the Order covers all similarly situated Massachusetts borrowers. The Commonwealth is well-positioned to represent the interests of the borrowers listed in Exhibit 4; indeed the Attorney General submitted the DTR through her role as the Commonwealth's chief law enforcer. *See Sec'y of Admin. & Fin. v. Att'y Gen.*, 367 Mass. 154, 159 (1975).

Courts have not indulged governmental defendants who comply with the letter of an order but do not extend relief to similarly situated individuals. In *Bizjak v. Blum*, 490 F. Supp 1297 (N.D.N.Y. 1980), the plaintiffs challenged case-record access restrictions in fair hearings involving Aid to Families with Dependent Children ("AFDC") and the Medical-Assistance programs. The court granted class certification to the plaintiffs because of the defendant's

17

history of noncompliance with state-court decisions on this question and the defendant's refusal to assure that she would not continue to enforce the restrictions in the face of an individual determination. *Id.* at 1301. Another federal court came to the same conclusion in another case involving the same defendant. In *Ram v. Blum*, 533 F. Supp. 933 (S.D.N.Y. 1982), the court approved class certification in a case challenging New York's method for calculating the amount of the monthly grant to families through the AFDC program. The court noted that it granted class certification at least in part because the defendant made no commitment to providing relief granted to the named plaintiff across the wider class, and in fact evinced the intention not to provide relief to the broader class. *Id.* at 939. Other courts have required governmental defendants to provide positive assurance they intend comply with the court's order with respect to other similarly situated individuals. *See Catanzano by Catanzano v. Dowling*, 847 F. Supp. 1070, 1079 (W.D.N.Y. 1994) (citing *Doe v. Coughlin*, 697 F. Supp. 1234, 1235 n. 4 (N.D.N.Y. 1988)); *Calkins v. Blum*, 511 F. Supp. 1073, 1089–90 (N.D.N.Y.1981), *aff'd,* 675 F.2d 44 (2d Cir. 1982). *See also Kansas Health Care Ass'n, Inc. v. Kansas Dept. of Social and Rehabilitation Services*, 822 F. Supp. 687, 689 (D. Kans. 1993) (denying class certification because "[w]e have no reason to doubt that defendants would apply any changes made to the reimbursement formula uniformly to nursing homes in Kansas").

In this case, the Secretary has already made evident that she does not consider herself bound to comply with the governing law as declared by the Court. If the Court concludes that the Order did not cover all individuals listed in Exhibit 4, it should allow the Commonwealth's motion to intervene and expand the Order to cover each individual listed in Exhibit 4.

## **CONCLUSION**

Based on the foregoing, the Commonwealth moves this Court to compel compliance with its Order, or in the alternative, grant its motion to intervene. The Department should be barred

from involuntary collection against borrowers listed in Exhibit 4 of the DTR until it renders a decision of the merits of the borrower defenses, including consideration of the borrower defenses asserted in the DTR.

Respectfully submitted,

COMMONWEALTH OF MASSACHUSETTS
ATTORNEY GENERAL
MAURA HEALEY

*/s/ Timothy S. Hoitink*
Glenn S. Kaplan (BBO No. 567308)
Timothy S. Hoitink (BBO No. 672661)
Assistant Attorneys General
Insurance and Financial Services Division
Public Protection and Advocacy Bureau
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
(617) 963-2453 (Kaplan)
(617) 963-2465 (Hoitink)
Glenn.Kaplan@mass.gov

Dated: February 26, 2019　　　　　　　　　Timothy.Hoitink@mass.gov

## **CERTIFICATE OF SERVICE**

I, Timothy S. Hoitink, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants by First Class Mail.

Dated: February 26, 2019　　　　　*/s/ Timothy S. Hoitink*　　x
　　　　　　　　　　　　　　　　　Timothy S. Hoitink