UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————————
                                                    )
DARNELL E. WILLIAMS and YESSENIA M.                 )
TAVERAS,                                             )
                                                    )
                    Plaintiffs,                     )
                                                    )
v.                                                  )        Civil Action No. 16-11949-LTS
                                                    )
ELISABETH DEVOS, *in her official capacity as*      )        **Leave to File Excess Pages**
*Secretary of the U.S. Department of Education*,    )        **<u>Granted on March 26, 2019</u>**
                                                    )
                    Defendant.                      )
———————————————————————                             )

### <u>OPPOSITION TO MOTION BY THE COMMONWEALTH OF MASSACHUSETTS TO SEEK RELIEF ON BEHALF OF NON-PARTIES AND/OR TO INTERVENE</u>

This lawsuit was filed in October 2016 and has been extensively litigated since that time.  In June 2017, the Commonwealth of Massachusetts (the "Commonwealth") filed an *amicus* brief through the Office of Massachusetts Attorney General Maura Healy.  Recently, the parties to the case – the Secretary of Education ("Defendant") and Plaintiffs Darnell Williams and Yessenia Taveras ("Plaintiffs") – reached a settlement.  Now, however, two and a half years after the case was filed and one and a half years after this Court dismissed the claims on behalf of individuals not named in the Amended Complaint, the Commonwealth seeks to intervene on their behalf.  The Commonwealth's motion effectively seeks to overturn the Court's September 14, 2017 order of dismissal by extending its October 24, 2018 order to grant relief to individuals the Court had already dismissed.  At no time during this litigation did the Commonwealth take legal action to challenge or clarify the Court's prior orders, nor did its attorney raise this issue with the Court, including at the recent status conference on February 5, 2019.  Instead, the Commonwealth chose to pursue relief on behalf of Corinthian borrowers by filing an action in the U.S. District Court for the District of Columbia ("D.C. Court").  The D.C. Court entered an unfavorable order, which precludes the Commonwealth's belated attempt

to seek relief here.  In any event, the Commonwealth lacks standing and the Court should deny its

untimely and prejudicial motion for the reasons set forth below.

## BACKGROUND

**1.  Plaintiffs Filed This Civil Action in 2016, and the Court Dismissed All Claims on Behalf of Other Unnamed Individuals.**

Plaintiff Williams filed this civil action on September 28, 2016 against the Secretaries of the

U.S. Departments of the Treasury and Education, alleging claims under the Administrative Procedure

Act ("APA") and the Declaratory Judgement Act ("DJA").  (Doc. No. 1).  Before the Defendants

responded to the Complaint, Plaintiff filed an Amended Complaint, adding Plaintiff Taveras, and

seeking the following relief on behalf of the two named Plaintiffs and other unnamed Corinthian

students:

A.  Entering a declaratory judgment, pursuant to 28 U.S.C. § 2201, stating that Plaintiffs' student loan debts incurred from Everest Chelsea are not certifiable for tax refund offset;

B.  Further declaring that the certification of student loan debts from Corinthian is unlawful under the Debt Collection Improvement Act;

C.  Further declaring that offset by the Department of Treasury of such debts is unlawful under the Debt Collection Improvement Act;

D.  Further declaring that the Department of Education is obligated to stop certifying and recertifying, and withdraw existing certifications of student loan debts from Corinthian;

E.  Further declaring that the Department of Treasury is obligated to stop offsetting student loan debts from Corinthian;

F.  Striking the Department of Education's final determination or, in the alternative, failure to make a final determination, that Plaintiffs' debts are legally enforceable as arbitrary and capricious, unlawful, and/or short of a mandatory duty, in violation of the Administrative Procedure Act;

G.  Ordering ancillary relief under 28 U.S.C. § 2202, including refund of amounts already seized from Plaintiffs pursuant to the unlawful certification for offset;

H.  Ordering Defendants to pay the cost of this action, together with reasonable attorneys' fees pursuant to the Equal Access to Justice Act, 28

U.S.C. § 2412(d)(1)(A), as determined by the Court; and

I. Granting such other and further relief as the Court may deem just and proper.

("Am. Compl.," Doc. No. 5, Prayer for Relief, at 16-17).  On January 6, 2017, Defendants moved to dismiss the Amended Complaint, arguing that: (1) the Court lacked subject matter jurisdiction; (2) the Secretary of the Treasury was an improper party to the suit; (3) the Court lacked jurisdiction over Plaintiffs' claims for injunctive relief; (4) Plaintiffs failed to exhaust their administrative remedies; (5) Plaintiff Taveras's claims were not ripe; and (6) Plaintiffs lacked standing to bring claims on behalf of other unidentified Corinthian students.  (See generally Doc. No. 19).  Thereafter, Plaintiffs voluntarily dismissed their claims against the Secretary of the Treasury, but opposed the rest of the motion.  (See Doc. Nos. 22 and 23).

After the motion to dismiss was fully briefed, but before the Court issued its decision, the Commonwealth filed an *amicus* brief in support of the Plaintiffs' claims.  (See Doc. Nos. 27 ("Motion") and 29 ("*Amicus* Brief")).[1]  In support of its Motion, the Commonwealth noted that federal district courts, "frequently welcome amicus briefs from non-parties concerning legal issues that have potential ramifications beyond the parties directly involved. . . .;" that the Court had good cause to accept its *Amicus* Brief because, *inter alia*, the brief "offer[ed] the Commonwealth's perspective, which is naturally broader than that of the Plaintiffs;" and the "Commonwealth has an interest in ensuring that no Massachusetts resident is subject to involuntary collection for debts incurred based on violation of state law."  (Motion at 3, 4) (citations omitted).  In short, the Commonwealth was clear that it supported Plaintiffs' Amended Complaint to the extent that it sought relief on behalf of Corinthian students in Massachusetts, identified as those individuals listed on Exhibit 4 to its "DTR application" ("Exhibit 4").  (See, e.g., *Amicus* Brief at 10-13).

---

[1] Upon information and belief, a representative of the Massachusetts Attorney General's office has received ECF notices in this case since the filing of the Commonwealth's *amicus* brief.

Nonetheless, with the benefit of the Commonwealth's *Amicus* Brief in addition to the briefs filed by the parties, on September 14, 2017, the Court granted Defendant's motion to dismiss in part and dismissed the Amended Complaint to the extent that it sought relief on behalf of unnamed individuals.  Specifically, the Court held:

> The [18] Motion to Dismiss is ALLOWED INSOFAR as the Complaint contains *(1)* a prayer for injunctive relief and *(2) seeks relief on behalf of persons other than the named Plaintiffs*. The Court renders the *first portion of its ruling* in light of the presumption that the defendant, a public official, will act in good faith and comply with governing law as declared by the Court. See, e.g., Linan-Faye Constr. Co., Inc. v. Housing Auth. of City of Camden, 49 F.3d 915, 924 (3d Cir. 1995).[2] The Motion is OTHERWISE DENIED WITHOUT PREJUDICE to the Court's consideration of the issues raised after filing of the administrative record and the submission of supplemental briefs on the schedule proposed by the parties in Doc. No. 34.

(Doc. No. 35) (emphasis added) (footnote not in the original).  The Commonwealth did not move to reconsider or otherwise challenge the Court's order.[3]

### 2. Instead, the Commonwealth Separately Sued the Department of Education and Secretary DeVos Under the APA for Failing to Consider its "DTR Application" and Certifying the Debts of Corinthian Students for Treasury Offset.

Rather, on December 14, 2017, the Commonwealth, along with the States of Illinois and New York (together, the "States"), filed an action against the Department of Education ("Department") and Secretary Elisabeth DeVos (the "Secretary") in the U.S. District Court for the District of Columbia ("D.C. Court") seeking relief on behalf of Corinthian students.  See Massachusetts v. Dep't of Educ.,

---

[2] In Linan, the court noted that its inquiry into "whether to prevent the government from receiving the benefit of the termination for convenience clause focused on whether the government evidenced any bad faith in terminating the contract."  49 F.3d at 924 (3d Cir. 1995) (citing, *e.g.*, SMS Data Products Group, Inc. v. United States, 19 Cl.Ct. 612, 617 (1990) ("This court presumes that Government officials act in good faith.").  There is no evidence of bad faith here.

[3] Thereafter, the parties to this litigation, in communication and collaboration with the Massachusetts Attorney General's office, negotiated a process for the limited disclosure of the Massachusetts Attorney General's "DTR Application."  (See, e.g., Doc. Nos. 36, 63).  When Defendant subsequently filed the Administrative Record pertaining to the two named Plaintiffs, the Commonwealth did not dispute the scope of the record, which lacked information pertaining to any other Corinthian student.  (See, e.g., Document No. 43).

Civil Action No. 17-02679 (D.D.C.) ("D.C. Action").  In its D.C. Complaint, the Commonwealth

specifically alleged:

> Over two years ago, on November 30, 2015, the Massachusetts AGO
> submitted a borrower defense to repayment claim to the Department
> covering students who enrolled at Everest Institute in Massachusetts
> from 2007 through 2014 (the "Massachusetts DTR Application").
> This claim for federal loan forgiveness, proffered to the Department
> by the Massachusetts AGO on behalf of Everest students who
> enrolled in Massachusetts, outlined illegal actions by the school,
> included over 2,700 pages of supporting documentation, and
> specifically identified more than 7,000 students entitled to a loan
> discharge, including their campus attended, program, credential level,
> and enrollment date.  The Massachusetts AGO later submitted to the
> Department a copy of the Massachusetts Superior Court judgment the
> AGO obtained against the school for violations of the Massachusetts
> Consumer Protection Act, M.G.L. c. 93A, § 1, et seq.

(D.C. Compl. ¶ 4).  As such, the Commonwealth alleged that the Department and the Secretary

violated the APA by certifying the debts of Corinthian students for offset and/or unreasonably or

unlawfully withheld agency action by refusing to process individually signed borrower defense to

repayment claims.  (D.C. Compl. at Counts 1 and 3).  The Commonwealth requested that the Court,

among other things: declare that the student loan debts of Corinthian students were not legally

enforceable; strike any determination by the Department that debts of Corinthian students were legally

enforceable; and order ancillary relief, including refunding amounts seized through the Treasury

Offset program ("TOP").  (D.C. Compl., Prayer for Relief, at 38-39).

Thereafter, between February 2018 through May 2018, Plaintiffs and the Defendant – the

parties to this litigation – extensively briefed cross motions for judgment on the record, which

contained the loan documents for these two Plaintiffs.  (See, e.g., Doc.s No. 68, 80, 81, 84, 87).

During the briefing process, the Commonwealth made no additional *amicus* filings in support of the

Plaintiffs or with respect to any claims of other unnamed individuals, which the Court had dismissed

in September 2017.  (Doc. No. 35).  During the time the parties were briefing the cross motions,

however, the Commonwealth *did* amend its complaint in the D.C. Action.  While the Amended

Complaint in the D.C. Action did not seek to add or remove any parties to the case, it narrowed the claims to single cause of action:  unlawful collection activity in violation of the APA.  (D.C. Action Amended Complaint, Doc. No. 21, attached hereto at Exhibit A, ¶¶ 118-121).  Specifically, the Commonwealth alleged that because the debts were legally unenforceable, it was arbitrary, capricious or in violation of law for the Department to certify the debts of certain Corinthian students for offset through TOP.  (Id.).  As such, the Commonwealth requested, *inter alia*, that the Court declare that the debts of the Corinthian students were not legally enforceable, vacate the referral of the debts to TOP, and refund any amounts seized.  (Id. at 30-31).

### 3.   The D.C. Court Dismissed the Commonwealth's Complaint for Lack of Standing.

On October 12, 2018, the D.C. Court dismissed the case for lack of standing.  In its decision, which is attached hereto at Exhibit B and was cited by the Commonwealth in its motion papers (see Doc. No. 116 at 13),[4] the D.C. Court noted, "At issue in this case are the delinquent student loan debts of borrowers who attended Corinthian's colleges," and discussed the Commonwealth's argument, "that the debts . . . are not legally enforceable because of the company's fraudulent misrepresentations, and that the Department knows these debts are unenforceable."  (D.C. Ct. Order at 3-4).  The Court found, however, that the States lacked standing to bring suit on behalf of the unnamed Corinthian borrowers.  (Id. at 6).

First, the Court found that, although the States have "a cognizable sovereign interest in enforcing their laws, the States allege no harm to that interest traceable to the Department's conduct." (Id. at 6).  The Court specifically addressed the Department's interpretation of Massachusetts state law, but found that the Commonwealth and other States had not "identified any agency conduct encumbering their capacity to enforce state laws and have therefore failed to establish standing based

---

[4] The decision is published as Commonwealth of Massachusetts v. United States Dep't of Educ., 340 F.Supp.3d 7 (D.D.C. 2018).

on harm to their sovereign interests." (<u>Id.</u> at 9-10).[5]

Second, the Court found that the States could not rely on their *parens patrie* status for standing because, "the States cannot sue the federal government when both are acting in furtherance of a shared quasi-sovereign interest in protecting citizens' economic well-being." (<u>Id.</u> at 6). The D.C. Court noted that states generally lack *parens patrie* standing to sue the federal government, and that the States had not established a basis for the exception in this case. (<u>Id.</u> at 12-13).

Third, the D.C. Court found that the Commonwealth had not "plead harm to [its] proprietary interests with sufficient concreteness and particularity." (<u>Id.</u> at 6). Specifically, the Court noted that the States' generalized assertions regarding an increase in government benefits to the defrauded borrowers and a decrease in tuition revenue to the States' public universities were not enough to establish standing. (<u>Id.</u> at 14-15).

The Court entered its order on October 12, 2018 and none of the States, including the Commonwealth, appealed from the decision, which is final. (<u>See</u> D.C. Action, Docket, attached hereto at Exhibit C).

### 4. This Court Entered an Order Directing Defendant to Take Certain Actions With Respect to the Borrower Defense Claims of the Two Named Plaintiffs.

Less than two weeks later, on October 24, 2018, this Court entered its order on cross motions for judgment (Doc. No. 99) based on the record before it relating to these two Plaintiffs. In its order, the Court found that Defendant acted arbitrarily and capriciously by:

> (1) ignoring or refusing to consider the DTR prior to certifying the *plaintiffs'* loans for tax refund offsets; (2) failing to determine *whether Williams and Taveras*, in light of the administrative record and the DTR, had established valid borrower defenses as defined in Education's regulations; and (3) failing to issue a reasoned decision on either of these points.

---

[5] Indeed, the Commonwealth successfully brought an action under the Massachusetts Consumer Protection Act, M.G.L. c. 93A, against Corinthian in state court. (<u>See</u> Document No. 116 at 2-3) ("the Commonwealth obtained a final judgment against Corinthian in which the Massachusetts Superior Court ordered restitution in the amount of $67,333,019").

(Doc. No. 99 at 29).  As a result, the Court:

(1)   allow[ed] in part and deni[ed] in part the *plaintiffs'* Motion for Judgment, Doc. No. 67, as described below;

(2)   denie[d] the Secretary's Motion for Judgment, Doc. No. 80;

(3)   vacate[d] the certifications for offset *as to Williams and Taveras*;

(4)   declare[d] that Attorney General Healey's letter, Doc. No. 47-1, required the Secretary to render a decision on the merits *of Williams and Taveras's borrower defenses*;

(5)   remand[ed] this matter to the Secretary for redetermination of her certification decision, including consideration of the borrower defense asserted by Attorney General Healey's letter, Doc. No. 47-1, *on behalf of Williams and Taveras*;

(6)   order[ed] the Secretary to report on the status and timing of her decision in 60 days; and

(7)   retain[ed]jurisdiction of this matter in the event of an appeal from or challenge to the administrative decision ordered by paragraph 5 and any *subsequent decision regarding certification for offset as to Williams and Taveras*.

(Doc. No. 99 at 29-30) (emphasis added).  While the Court noted that "the DTR invoked a borrower defense proceeding on behalf of the people listed on Exhibit 4, including Williams and Taveras," it did not order Defendant to take any action with respect to any other individuals, consistent with its prior order dismissing any claims for relief on their behalf.  (Compare Doc. No. 99 with Doc. No. 35).

### 5.   The Commonwealth Did Not Raise the Scope of the October 24, 2018 Order With the Court for Four Months.

The Commonwealth took no action to challenge, clarify, reconsider or amend the Court's Order, despite receiving ECF notifications and participating in this litigation.[6]  Most recently, counsel

---

[6] The Commonwealth attaches to is brief some correspondence between the Massachusetts Attorney General's office and the undersigned AUSA and argues that this correspondence somehow makes its present filing timely.  First, the operative order dismissing the relief it now seeks is dated September 14, 2017, not October 24, 2018.  Moreover, nothing in the letters between counsel tolls the time for the Commonwealth to challenge either of the Court's orders.  Finally, the undersigned's December 12, 2018 letter explicitly lists the Court's specific directives and Defendant's intent to

for the Commonwealth attended a hearing with the parties on February 5, 2019, which the Court set at

the Plaintiffs' request in order to discuss Defendant's compliance with the October 24, 2018 Order.

(See Doc. Nos. 102, 103, 106 and 107).  During the hearing, counsel for the parties and the Court

discussed at length Defendant's compliance efforts to date.  The Court did not express any view that its

Order required Defendant to act on the claims of individuals other than the two named Plaintiffs, nor did

counsel for the Commonwealth raise such a concern, despite sitting at counsel's table and participating

in the hearing.  Following the hearing, the Court issued an order requiring the Secretary to:

> (1) render a decision on the merits of the *plaintiffs'* applications for
> borrower defense, including the claims asserted by Attorney General
> Healey's letter, Doc. No. 47-1, by March 18, 2019, and (2) inform the Court
> of her decision by the same date.  If any party, including Attorney General
> Healey, wishes to submit additional information to inform the Secretary's
> decision, such information shall be submitted to the Secretary by close of
> business on February 15, 2019.

(Doc. No. 108 at 3) (emphasis added).

On February 26, 2019, Plaintiffs and Defendant notified the Court that they had reached a

settlement in principle[7] and, accordingly, sought a stay of the March 18, 2019 compliance deadline.

(See Doc. No. 112).  The Court granted the stay until May 28, 2019, at which time the parties must file

a joint status report if they have not reported a settlement.  (Doc. No. 113).

Thereafter, the Commonwealth filed the instant motion to compel compliance with the Court's

October 24, 2018 Order pursuant to Federal Rule of Civil Procedure 71 ("Rule 71"), or, in the

alternative, to intervene pursuant to Federal Rule Civil Procedure 24 ("Rule 24").  (Doc. No. 115).  As

set forth below, the Commonwealth is precluded by *res judicata* from pursuing the relief it seeks

---

comply therewith and, as such, the Commonwealth was on notice, at the latest, as of that date that
the Defendant reasobably interpreted the order as requiring action only with respect to the Plaintiffs.

[7] Notwithstanding the Commonwealth's assertions that the parties have not reached a final
settlement (see DocNo. 116 at 5), the Commonwealth is not privy to the parties' settlement
negotiations or the status thereof.  In fact, the parties have executed a final settlement agreement
and a Stipulation of Dismissal with Prejudice will be forthcoming.

through its untimely motion.  Even if claim preclusion does not apply, the Commonwealth lacks

standing, which is required under both Rule 71 and Rule 24.  Moreover, granting the Commonwealth's

motion at this stage would significantly prejudice the Defendant, who, after more than two and a half

years of protracted litigation, has reached a final settlement with the Plaintiffs.

## ARGUMENT

While the specific analyses for the application of claim preclusion and motions under Rules 24

and 71 vary, there are several determinative factors common to each.  In short, the Commonwealth

lacks standing to seek the relief it now requests and, even if it had standing, its motion is untimely, an

obvious attempt at side-stepping a prior adverse decision, and patently prejudicial to the Defendant.  For

these reasons, as further explained below, Defendant respectfully requests that the motion be denied in

its entirety.

### 1.  The Commonwealth's Motion is Precluded by the Doctrine of *Res Judicata*.

Under federal law, a final judgment on the merits of an action precludes the parties from re-

litigating claims that were or could have been raised in that action.  Allen v. McCurry, 449 U.S. 90, 94

(1980).  For a claim to be precluded, there must be: (1) a final judgment on the merits in an earlier

action; (2) sufficient identity between the causes of action asserted in the earlier and later suits; and (3)

sufficient identity between the parties in the two suits.  See e.g., Aunyx Corp. v. Canon U.S.A., Inc.,

978 F.2d 3, 6 (1st Cir. 1992), *cert. denied*, 507 U.S. 973 (1993).[8]  This doctrine, also known as claim

preclusion, serves the purpose of relieving parties of the cost and vexation of multiple lawsuits,

conserving judicial resources, and encouraging reliance on adjudication.  Breneman v. United States *ex*

---

[8] Federal law governs the *res judicata* effects of a federal court judgment in a federal question case as applied to a later case that again presents a federal question to a federal court.  See Blonder–Tongue Labs., Inc. v. University of Ill. Found., 402 U.S. 313, 324, n.12 (1971); Kale v. Combined Ins. Co., 924 F.2d 1161, 1165 (1st Cir. 1991), *cert. denied*, 502 U.S. 816; 18 Charles A. Wright, *et al.*, FEDERAL PRACTICE AND PROCEDURE § 4466 at 617–18 (1981).

*rel.* F.A.A., 381 F.3d 33, 38 (1st Cir. 2004) (internal citations omitted).

Here, the Commonwealth brought the same claim against the same party and sought the exact same relief it now seeks – a court order barring Defendant from involuntary collection against Corinthian student-borrowers in Massachusetts – through an action with another federal district court. (Compare D.D.C. Am. Compl. at 30-31 with Doc. No. 116 at 18-19).  In other words, the Commonwealth's purported claims here "stem from the same series of transactions as the claims asserted in the initial litigation."  Gonzalez v. Banco Cent. Corp., 27 F.3d 751, 756 (1st Cir. 1994) (finding sufficient identicality of the causes of action where the claims in both cases arose out of "a single course of conduct undertaken by a band of allied defendants").  The D.C. Court entered a final judgment, holding that the Commonwealth lacked standing to seek that relief on behalf of unnamed individuals.[9]  The Commonwealth did not appeal that judgment, entered in favor of the Department and its Secretary, the exact same Defendant in this litigation.  Instead, the Commonwealth seeks by this untimely motion to circumvent the D.C. Court's order by seeking identical relief through this action.  Its

---

[9] Under prevailing law in the U.S. Court of Appeals for the District of Columbia Circuit, the dismissal for lack of standing by the D.C. Court is a "final judgment on the merits."  See DCFS USA, LLC v. District of Columbia, 820 F. Supp. 2d 1, 3 (D.D.C. 2011), aff'd, No. 12–7073, 2013 WL 500820 (D.C. Cir. Jan. 17, 2013) (dismissing a plaintiff's subsequent complaint per *res judicata*, where the plaintiff's prior complaint was dismissed with prejudice for lack of standing); Caldwell v. Kagan, 865 F. Supp. 2d 35, 41, n.1 (D.D.C. 2012), aff'd, No. 12–5298, 2013 WL 1733710 (D.C. Cir. Mar. 22, 2013).  This is, however, not the express rule in First Circuit.  Cf. Katz v. Pershing, LLC, 806 F. Supp. 2d 452, 456 (D. Mass. 2011) ("Different consequences flow from dismissals under 12(b)(1) and 12(b)(6): for example, dismissal under the former, not being on the merits, is without *res judicata* effect.") (quoting Ne. Erectors Ass'n of the BTEA v. Sec'y of Labor, Occupational Safety & Health Admin., 62 F.3d 37, 39 (1st Cir. 1995)).  Still, the First Circuit has held that, "The policy underlying the application of federal *res judicata* principles is that the federal courts must have the power to define the effect of their own judgments."  Apparel Art Int'l, Inc. v. Amertex Enterprises Ltd., 48 F.3d 576, 582, n.7 (1st Cir. 1995) (citing Johnson v. SCA Disposal Services of New England, Inc., 931 F.2d 970, 974 (1st Cir. 1991) and Kern v. Hettinger, 303 F.2d 333, 340 (2d Cir. 1962)).  For this reason, Defendant respectfully submits that the D.C. Court's Order be given the preclusive effect accorded to it by D.C. Circuit jurisprudence.  See, e.g., C.H. Robinson Worldwide, Inc., v. Lobrano, 695 F.3d 758, 764 (8th Cir. 2012) ("The law of the forum that rendered the first judgment controls the *res judicata* analysis.") (citing Laase v. Cnty. of Isanti, 638 F.3d 835,856 (8th Cir. 2011)).

attempt is barred by the doctrine of *res judicata*.  See, e.g., Connaughton v. New England Tel. & Tel.,

Civil Action No. 87-2369-MA, 1988 WL 34321 at *2-3 (D. Mass. Mar. 18, 1988) ("It is clear that in the

First Circuit, a mere change in a proffered legal theory does not alter the preclusive effect of a prior

judgment where the underlying facts are the same") (citing, *e.g.*, Pasterczyk v. Fair, 819 F.2d 12, 14 (1st

Cir. 1987) (holding that where the facts were almost identical in a second action as in the first, and

where the parties were the same and the cause of action arose from a common transaction, a change in

legal theory or in the relief requested does not alter the preclusive effect of the first suit); Capraro v.

Tilcon Gammino, Inc., 751 F.2d 56, 57 (1st Cir. 1985) ("We agree that the instant action presents a

different claim from that on which the earlier litigation was based. Nonetheless, the litigation of that

claim is foreclosed because it deals with one of the same series of transactions as was presented in the

earlier litigation by these plaintiffs"); Prizio v. City of Revere, 629 F. Supp. 538, 539-40 (D. Mass.

1986) ("a plaintiff may not 'split' his claim and later attempt to relitigate issues that 'were or could have

been dealt with in an earlier litigation'. . . claim preclusion applies to claims that could have been

brought as well as to those actually asserted.  For purposes of res judicata a second claim is not a new

claim simply because the plaintiff applies a new legal theory to the same facts") (citation omitted)).  See

also DCFS USA, LLC, 820 F. Supp. 2d at 3 ("The remedy for an adverse decision is an appeal, not a

new lawsuit").

**2.   The Commonwealth's Motion is a Thinly Veiled Attempt at Forum Shopping.**

By taking no action to challenge the adverse ruling by the D.C. Court, and instead seeking the

same relief through an untimely and prejudicial motion to intervene in this case – after the parties

reported a settlement in principle – the Commonwealth is clearly and unabashedly engaging in forum-

shopping.  See, e.g., LegalForce, Inc. v. Legalzoom.com, Inc., Case No. 18-CV-06147-ODW-GJS,

2018 WL 6179319 at *3 (C.D. Cal. Nov. 27, 2018) ("Forum shopping could reasonably be inferred if

the plaintiff files the same or similar case  . . . in a different district after receiving unfavorable rulings

there.") (citing, *e.g.*, <u>Carrera v. First Am. Home Buyers Prot. Co.</u>, No. CV 11-10242-GHK (FFMx),

2012 WL 13012698 at *6 (C.D. Cal. Jan. 24, 2012) (it is reasonable to infer forum shopping where the

same party, represented by the same attorneys, received an unfavorable decision on the same claim or

claims prior to bringing the present case) and <u>Alexander v. Franklin Resources, Inc.</u>, No. C 06–7121 SI,

2007 WL 518859 at *4 (N.D. Cal. Feb. 14, 2007) (same)).   Here, the Commonwealth's effort to forum

shop – *i.e.,* to bring this motion in this Court instead of directly challenging the D.C. Court's opinion –

undermines the purposes underlying the doctrine of *res judicata*.   For instance, if this Court were to find

that the Commonwealth has standing and allow the motion to intervene, it would create inconsistent

decisions on the same topic, in derivation of the purposes of the rule.   <u>Apparel Art Int'l, Inc. v. Amertex</u>

<u>Enterprises Ltd.</u>, 48 F.3d 576, 583 (1st Cir. 1995) (quoting <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980))

("The purpose of *res judicata* is to 'relieve parties of the cost and vexation of multiple lawsuits,

conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on

adjudication.'").   The Court should not reward the Commonwealth's clear subversion of the intended

judicial process and, accordingly, should deny the motion in its entirety.

   **3.   <u>The Commonwealth Lacks Standing to Enforce the Order And/Or To Intervene</u>.**

   Even if the Court declines to give the D.C. Court's decision preclusive effect, the

Commonwealth lacks standing to enforce the October 24, 2018 Order.   In order to have Article III

standing, a plaintiff must adequately establish: (1) injury in fact, *i.e.* concrete and particularized

invasion of legally protected interest; (2) causation, *i.e.* fairly traceable connection between alleged

injury in fact and alleged conduct of defendant; and (3) redressability, *i.e.* that it is likely and not

merely speculative that plaintiff's injury will be remedied by relief plaintiff seeks in bringing suit.

<u>Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.</u>, 554 U.S. 269, 273-74 (2008) (citing U.S. CONST.

ART. 3, § 2).   Standing is required for the Commonwealth to succeed under either Rule 71 or Rule 24.

   The primary questions in determining whether a nonparty can enforce an order under Rule 71

are (i) whether the nonparty is an intended beneficiary of the order; and (ii) whether the nonparty has Article III standing to sue.  See Growers 1-7 v. Ocean Spray Cranberries, 2014 WL 1764533 at *4 (D. Mass. May 2, 2014) (citing James Wm. Moore et al., MOORE'S FEDERAL PRACTICE § 71.03 & n. 5 (3d ed. 2013)).  It is clear that "[the rule] does not create underlying rights or obligations . . . [and] to enforce an order, a nonparty still must establish that he has a right to such relief."  Maldonado v. Damas Foundation, 2015 WL 13264442 at *9 (D. P. R. March 24, 2015).  In other words, "Rule 71 simply sets forth a procedure for a party to sue when it already has standing.  It does not confer standing where it does not otherwise exist."  Growers 1-7, 2014 WL 1764533 at *4.

Similarly, standing is required to intervene under Rule 24 in this action, where the other parties have settled and will not continue litigating.  Mangual v. Rotger-Sabat, 317 F.3d 45, 61 (1st Cir. 2003) ("It is clear that an intervenor, whether permissive or as of right, must have Article III standing in order to continue litigating if the original parties do not do so.") (citing Arizonans for Official English v. Arizona, 520 U.S. 43, 65 (1997)); see also Int'l Paper Co. v. Inhabitants of Town of Jay, 887 F.2d 338, 347 (1st Cir. 1989) (denying motion by state of Maine to intervene) ( "If the government merely wants to make its views known, it can very often secure permission to file an amicus brief. By seeking intervention, the government seeks instead to make itself a party to the lawsuit, with all the rights of an original party.") (citing Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 1920, 488–90) (2d ed. 1986)).

Here, for the reasons articulated by the D.C. Court, the Commonwealth lacks standing to seek the relief it now seeks.  The D.C. Court specifically rejected the argument that the Commonwealth again advances here that its "sovereign interests" as the "chief law enforcement officer" in Massachusetts creates standing for the relief it seeks.  (Compare D.C. Court Order at 6  ("Though they have a cognizable sovereign interest in enforcing their laws, the States allege no harm to that interest traceable to the Department's conduct") with Doc. No. 116 at 15).

Second, while the Commonwealth makes an effort to identify its own proprietary interest or concrete injury not already addressed and rejected by the D.C. Court, that effort is undermined by its own admission, early in the brief, that its motion is intended to "protect *the interests of the other 7,200 borrowers* listed in Exhibit 4." (Doc. No. 116 at 5) (emphasis added). Indeed, the Commonwealth further argues that its "interest" is in "vindicating its right to submit borrower defense to repayment claims and *advocate on behalf of defrauded Massachusetts students*." (Doc. No. 116 at 12) (emphasis added). These assertions are in line with this Court's reasoning that, when she submitted the "DTR Application," the Attorney General acted *as an attorney for the Corinthian students* listed in Exhibit 4. (See Doc. No. 99 at 21). It goes without saying, however, that a party's *attorney* at the administrative level does not *herself* have a legal "interest" in the ensuing litigation, particularly when her clients' claims have been dismissed by the Court and she did not challenge that decision. (See Doc. No. 35). Moreover, even if the Commonwealth could bring the claims on behalf of the other borrowers, it has not identified any borrower or borrowers who has or have been specifically harmed at the hands of the Defendant. Finally, to the extent that the Commonwealth – as opposed to its attorney - *does* have an interest, that interest has already been vindicated by the Court's Order directing Defendant to consider the Massachusetts Attorney General's submission as a borrower defense application on behalf of Williams and Taveras. (Doc. No. 99 at 29-30) (declaring that the Massachusetts Attorney General submitted a borrower defense application on behalf of Williams and Taveras and ordering the Secretary to make a determination thereon).[10]

---

[10] As noted, the Commonwealth has already exercised its authority under state law to pursue relief on behalf of defrauded Corinthian students. See also *supra*, note 5 (citing Document No. 116 at 2-3) ("the Commonwealth obtained a final judgment against Corinthian in which the Massachusetts Superior Court ordered restitution in the amount of $67,333,019").

**4.    The Commonwealth is Not Entitled to Relief Under Rule 71, Where the Order It Seeks to Enforce Does Not Provide Relief on Behalf of Non-Parties.**

Even if the Commonwealth had standing, which it does not, its Rule 71 motion should be denied.  When an order "*grants relief for a nonparty* or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party."  Fed. R. Civ. P. 71 (emphasis added).  This rule is "intended to assure that process be made available to enforce court orders in favor or against persons who are properly affected by them, even if they are not parties to the action."  Lasky v. Quinlan, 558 F.2d 1133, 1137 (2d Cir. 1977).

First, the October 24, 2018 Order does not, by its own terms, "grant relief for a non-party," where, as here, the Court explicitly dismissed Plaintiffs' Amended Complaint to the extent that it sought relief on behalf of non-parties in a prior order.  (See Doc. No. 35) (dismissing the Amended Complaint to the extent that it sought "relief on behalf of persons other than the named Plaintiffs").

Conversely, both of the cases relied upon by the Commonwealth involve non-parties trying to enforce orders that explicitly contained relief in their favor.  In Berger v. Heckler, 771 F.2d 1556 (2d Cir. 1985), the plaintiff brought a class action challenging the government's practice of interpreting the "color of law" to exclude certain immigrants when considering their entitlement to Supplemental Security Income ("SSI") benefits.  Id. at 1559.  Although no class was certified, the parties entered into a Consent Decree, in which the government agreed to an interpretation of the phrase "color of law" governing the determination of who was legally entitled to SSI benefits.  Id. at 1559-60.  Because the Consent Decree granted relief to non-parties, the Court allowed non-parties to intervene under Rule 71 and enforce the Consent Decree, finding that the Secretary could not back out of the deal she had made to resolve the case.  Id. at 1566, 1569.  But see Growers 1-7, 2014 WL 1764533 at *4 ("A well-settled line of authority from [the Supreme] Court establishes that a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it.") (quoting Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 750 (1975)).

16

Similarly, in <u>California Dep't of Social Services v. Leavitt</u>, 444 F. Supp. 2d 1088 (E.D. Cal. 2006), California's Department of Social Services ("DSS") brought an action against the U.S. Department of Health and Human Services ("HHS") seeking judicial review of HHS's proposed amendment to the state's Aid to Families with Dependent Children-Foster Care Program.  444 F. Supp. at 1093, *aff'd in part and rev'd in part*, 523 F.3d 1025 (9th Cir. 2008).  The Court held that the foster families had standing to enforce a judgement under Rule 71 because the Court's order required DSS and HHS to review *all* foster care cases in California open as of a particular date to determine its eligibility for aid in the wake of new case law and the foster families were able to produce evidence showing they had cases open as of that date.  <u>Id.</u> at 1098.  Ultimately, however, foster families were unable to prove non-compliance with the order and therefore their motion to enforce the judgment under Rule 71 was denied.  <u>Id.</u> at 1099.[11]

In both of these cases, the orders sought to be enforced contained relief for non-parties, as required for enforcement under Rule 71.  <u>See</u> Fed. R. Civ. P. 71 ("When an order *grants relief for a nonparty* or may be enforced against a nonparty, the procedure for enforcing the order is the same as for

---

[11] On this note, it goes without saying that Defendant disagrees with the Commonwealth's argument the Defendant is "not complying with" the Court's order.  (<u>See</u> Document No. 116 at 8-9).  Contrary to the Commonwealth's assertion, Defendant has not "made evident" that she does "not consider herself bound to comply" with the Order.  (<u>See id.</u> at 18).  Rather, due to the Court's explicit prior dismissal of the claims relating to other individuals (Document No. 35), the specific language in the Court's Ocotber 24, 2018 Order (Document No. 99), and the Court's subsequent compliance order (Document No. 108), Defendant reasonably interpreted the Court's Order as a directive that it take action with respect to the Plaintiffs Williams and Taveras, with whom it has since settled.  The Commonwealth's cases on this point are inapplicable because they are either class actions or, if they are not, there is no indication that the plaintiffs in those cases brought claims on behalf of unnamed individuals, which were then specifically dismissed by the Court, as here.  (<u>See</u> Document No. 116 at 17-18) (citing <u>Bizjak v. Blum</u>, 490 F.Supp. 1297 (N.D.N.Y. 1980) (class action); <u>Ram v. Blum</u>, 533 F.Supp. 933 (S.D.N.Y. 1982) (class action); <u>Catanzano v. Dowling</u>, 847 F. Supp. 1070 (W.D.N.Y. 1994) (class action); <u>Calkins v. Blum</u>, 511 F. Supp. 1073 (N.D.N.Y. 1981) (class action); <u>Kansas Health Care Ass'n v. Kansas Dep't of Soc. & Rehab. Servs.</u>, 822 F. Supp. 687, 689 (D. Kan. 1993) ("Plaintiffs have made allegations preliminary to class certification but have not formally moved for class certification. At this point, we do not believe class certification is necessary.")).

a party."). Here, on the other hand, the Court dismissed the claims on behalf of all unnamed individuals (Doc. No. 35) and ordered Defendant to take certain actions with respect to the specific debts of the two named Plaintiffs (Doc. No. 99); thereafter, the parties settled with respect to those Plaintiffs and their debts. (Doc. No. 112). Even if the Commonwealth had standing, which it does not, relief under Rule 71 is not available in these circumstances. See, e.g., United States v. Amer. Soc'y of Composers, Authors and Publishers, 341 F.2d 1003, 1008 (2d Cir.), cert. denied, 382 U.S. 877 (1965) (finding that Rule 71 expressly requires the court order to be made in favor of the party who seeks to enforce the order); Wang v. Gordon, 715 F.2d 1187, 1190 (7th Cir. 1983) (denying Rule 71 motion to enforce consent decree, which was not made in favor of the movant); Spangler v. Pasadena City Bd. of Educ., 537 F.2d 1031, 1033 (9th Cir. 1976) ("There is no indication in the history of Rule 71 that it was designed for other than the 'common sense' purpose of allowing identifiable individuals to enforce rights that have been specifically adjudged by a court order.") (citing 12 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 3031 at 80 (1973)); Steidl v. City of Paris, No. 05-2127, 2013 WL 3864353 at *3 (C.D. Ill. July 25, 2013) (denying Rule 71 motion where the consent judgment relied upon did not grant relief that "may be enforced against a nonparty"). Cf. Beckett v. Air Line Pilots Ass'n, 995 F.2d 280, 288, n.4 (D.C. Cir. 1993) (enforcement under Rule 71 allowed because consent decree required distribution of funds to eligible pilots, who were not parties to the litigation).

**5.  The Commonwealth Should Not Be Permitted to Intervene At this Late Date, Which Would Cause Undue Prejudice to the Defendant.**

Further, even if the Commonwealth had standing, which it does not, its motion to intervene in this action is untimely and, if allowed, would significantly prejudice the Defendant, who has reached a hard-earned settlement with the Plaintiffs.

**A.  The Commonwealth's Rule 24 Motion is Untimely.**

Rule 24 contemplates two types of intervention: intervention as of right and permissive intervention. The threshold requirement for both types of intervention is timeliness and the

Commonwealth's failure to satisfy this requirement "dooms intervention" in either form.  R&G
Mortgage Corp. v. Fed. Home Loan Mortg. Corp., 584 F.3d 1, 7 (1st. Cir. 2009) (denying intervention
as of right and permissive intervention as a result of a two and a half month delay from the time the
proposed intervenor learned of the lawsuit); Banco Popular v. Greenblatt, 964 F.2d 1227, 1230 (1st Cir.
1992) ("Timeliness stands as a sentinel at the gates whenever intervention is requested and opposed").
The timeliness inquiry, which considers the totality of circumstances, is informed by four factors: (i) the
length of time that the putative intervenor knew or reasonably should have known that his interests were
at risk before he moved to intervene; (ii) the prejudice to existing parties should intervention be
allowed; (iii) the prejudice to the putative intervenor should intervention be denied; and (iv) any special
circumstances militating for or against intervention. R&G Mortg., 584 F.3d at 7.

        An analysis of these factors here clearly indicates that the Commonwealth's motion to intervene
is untimely.  Compare Culbreath v. Dukakis, 630 F.2d 15, 20 (1st Cir. 1980) (intervention petitions filed
more than four years after initiation of the suit and within two months of submission of consent decree
settling suit did not satisfy timeliness requirements) with United Nuclear Corp. v. Cannon, 696 F.2d
141, 142 (1st Cir. 1982) (denying intervention as of right where motion filed seven months after lawsuit
began).  Here, this lawsuit was filed two and a half years ago, in October 2016.  The Commonwealth
knew, or reasonably should have known, that its now-asserted interests were at stake, at the latest, by
September 2017.  Prior to that, at least as of June 2017, the Commonwealth was aware of the litigation
and filed an *amicus* brief with the Court supporting the relief sought by the Plaintiffs on behalf of
Corinthian students in Massachusetts.  (Doc. No. 29).  Three months later, on September 14, 2017, the
Court allowed the Defendant's motion to dismiss insofar as the Amended Complaint sought relief on
behalf of persons other than Plaintiffs Williams and Tavares.  (Doc. No. 35).  This decision made clear
that any resulting order in the case would apply only to the two named Plaintiffs and should have put
the Commonwealth on notice that its claimed interests as to the other Corinthian students – that it now

seeks to advance – would not be adequately protected absent intervention.  R&G Mort., 584 F.3d at 8

("A motion to intervene is timely if it is filed promptly after a person obtains actual or constructive

notice that a pending case threatens to jeopardize his rights … Perfect knowledge of the particulars of

the pending litigation is not essential to start the clock running; knowledge of a measurable risk to one's

rights is enough.") (citing, e.g., Greenblatt, 964 F.2d at 1231).

Despite this knowledge, the Commonwealth chose not to seek reconsideration of the dismissal

or otherwise move to intervene in this litigation at any time in the last two and a half years.  Cf. R&G

Mortg., 584 F.3d at 10 (finding that two and a half months was undue delay by a putative intervenor

with knowledge that its rights were in jeopardy).  Instead, it chose to pursue its claims through litigation

in the D.C. Court.  Unsatisfied with that result, the Commonwealth now seeks to disrupt the parties'

resolution of the matter by seeking to intervene after the parties have reached a settlement.  The

significant prejudice caused by the delay weighs in favor of a finding of untimeliness.  New England

Carpenters Health Benefits Fund v. First DataBank, Inc., No. CV 05-11148-PBS, 2009 WL 10703303

at *4 (D. Mass. Nov. 5, 2009).

Notwithstanding the Commonwealth's assertion that "post-judgment" intervention should be

permitted,[12] requests for post-settlement intervention are rarely granted.  R&G Mortg., 584 F.3d at 10;

Greenblatt, 964 F.2d at 1231 ("Courts have historically viewed post-judgment intervention with a

jaundiced eye in situations where the applicant had a reasonable basis for knowing, before final

judgment, that its interest was at risk.").  In fact, the First Circuit has cautioned, "motions to intervene

---

[12.] Defendant adopts the Commonwealth's framing of the issue as "post-judgment."  (See Document
No. 116 at 10).  The Commonwealth cites to Acree v. Republic of Iraq, 370 F.3d 41, 50 (D.C. Cir.
2004), for the assertion that "post-judgment intervention is proper, and often permitted, where the
prospective intervenor's interest does not arise until after a judgment is entered." (Document No.
116 at 10).  In Acree, however, the United States was permitted to intervene post-judgment for the
specific purpose of challenging the Court's subject matter jurisdiction to enter an order that
impacted the nation's foreign policy initiatives, a narrow exception not remotely applicable here.
370 F.3d at 50-51.

that will have the effect of reopening settled cases are regarded with particular skepticism because such motions tend to prejudice the rights of the settling parties." R&G Mortg., 584 F.3d at 7.  As recognized by the Court in Greenblatt,

> The purpose of the basic requirement that the application to intervene be timely is to prevent last minute disruption of painstaking work by the parties and the court.  Prior to settlement, litigants often negotiate the terms of their conciliation with zeal and, sometimes, ferocity.  If a putative intervenor acts seasonably to contest a prospective settlement term, the existing parties can make an informed decision about whether to continue their attempt to strike a bargain, for they would be on notice that certain settlement provisions might have to withstand the intervenor's challenge. Delaying the intervention attempt until after final judgment robs litigants of this flexibility and can thus prejudice parties who invested significant amounts of time, money, and effort in an attempt to compose their differences.

964 F.2d at 1232 (internal citations omitted).

The Commonwealth's argument that post-settlement intervention does not prejudice the Defendant ignores two and a half years of protracted litigation and the parties' ultimate mutual decision to settle after lengthy negotiations.  Specifically, if the Commonwealth is permitted to intervene at this late date, Defendant will be forced to re-litigate an issue on which it has already received a favorable result in another court.  Moreover, intervention at this juncture will extend this litigation indefinitely and create a "last minute disruption of painstaking work by the parties and the court," which has resulted in a final resolution.  Greenblatt, 964 F. 2d at 1232.  When Defendant agreed to settle this matter, part of the benefit of its bargain was the end of protracted litigation and the associated time, expense and resources spent by the agency and its attorneys in defense of this case.  Should the Commonwealth be allowed to intervene, now, Defendant will be robbed of that significant benefit.  Cf. In re Endangered Species Act Section 4 Deadline Litig., 270 F.R.D. 1, 6 (D.D.C. 2010) (denying intervention to landowners based on prejudice to original parties where matter was currently stayed while the parties pursued settlement negotiations).

On the other hand, the Commonwealth would suffer no prejudice if intervention is denied.  The

D.C. Court clearly held – nearly six months ago – that the Commonwealth lacks standing to bring the claims it seeks to bring through its intervention.[13] The Commonwealth did not challenge that decision, nor did it seek clarification or reconsideration of Court's October 24, 2018 decision. To the extent the Court directed Defendant to consider the Commonwealth's DTR application as a borrower defense application on behalf of the Plaintiffs (see Doc. No. 99 at 29-30), the parties have resolved those claims. If the Commonwealth is prejudiced at all, it is so because of its own action – or rather inaction – until the eleventh hour. There are no special circumstances arguing in favor of intervention, which should be denied. See e.g., Greenblatt, 964 F.2d at 1233–34.

### B. Even if the Rule 24 Motion is Timely, The Commonwealth Should Not Be Permitted to Intervene.

Where, as here, the motion is clearly untimely, the Court need not reach the merits of the Commonwealth's intervention motion under Rule 24. Should the Court find that the Commonwealth's motion is timely, however, it should still deny it because the Commonwealth has failed to establish intervention is warranted.

Even if the motion was timely, which it is not, to succeed on a motion to intervene as of right, the Commonwealth must also establish: (1) the existence of an interest relating to the property or transaction that forms the basis of the pending action; (2) a realistic threat that the disposition of the action will impede its ability to protect that interest; and (3) the lack of adequate representation of its position by any existing party. R&G Mortg., 584 F.3d at 7; Travelers Indem. v. Dingwell, 884 F.2d 629, 637 (1st Cir. 1989). As set forth in the discussion of standing, *supra* at pages 10-15, the Commonwealth itself has no interest in the action, which, in any event, has settled. The D.C. Court has rejected the Commonwealth's arguments regarding its sovereign and propriety interests, and even the Commonwealth itself in its papers states that the its interest is in "vindicating its right to submit

---

[13] The Commonwealth's does not attach a proposed complaint to its motion.

borrower defense to repayment claims and advocate *on behalf of defrauded Massachusetts students*."
(Doc. No. 116 at 12) (emphasis added).  In the First Circuit, however, the interest required to merit
intervention must be "direct, not contingent."  Travelers Indem., 884 F.2d at 638.  Because the
Commonwealth has not established an interest that it itself holds – as opposed to the student borrowers
on whose behalf it seeks to intervene – it may not intervene as of right, even if it had timely sought to
do so.  See Town of Jay, 887 F.2d at 347 (denying Maine's motion to intervene as of right under Rule
24(a)(2), as Maine did not show that its ability to protect its interest in the proper interpretation of its
laws would be impaired by the ultimate resolution of this lawsuit); accord Amgen, Inc. v. Chugai
Pharm. Co., 808 F. Supp. 894, 905, n.15 (D. Mass. 1992), *aff'd sub nom*. Ortho Pharm. Corp. v.
Genetics Inst., Inc., 52 F.3d 1026 (Fed. Cir. 1995).

     For a motion under Rule 24(b)(2), the court will consider three factors when determining
whether to allow permissive intervention: whether (1) the applicant's claim or defense and the main
action have a question of law or fact in common; (2) the applicant's interests are not adequately
represented by an existing party; and (3) intervention would not result in undue delay or prejudice to the
original parties.  In re Thompson, 965 F.2d 1136, 1142, n.10 (1st Cir. 1992).  When deciding whether
permissive intervention is warranted, the district court "can consider almost any factor rationally
relevant."  Students for Fair Admissions v. President and Fellows of Harvard College, 308 F.R.D. 39,
45 (D. Mass. 2015) (denying motion to intervene) (citing Daggett v. Comm'n on Gov't Ethics &
Election Practices, 172 F.3d 104, 113 (1st Cir. 1999) (the district court properly considered that "the
addition of still more parties would complicate a case that badly needed to be expedited").  In addition,
Rule 24(b)(3) expressly provides that the court must consider whether intervention will prejudice the
existing parties or delay the action.  Here, it would do both.

     Allowing intervention at this juncture would be patently unfair for several reasons.  First, the
Commonwealth has known since at least September 2017 that the Court had dismissed the portion of

the Amended Complaint that seeks the relief it now seeks.  Second, the Commonwealth made the

choice not to challenge the Court's dismissal order, but rather started its own action in the D.C. Court.

Third, when the D.C. Court ruled against it in that action, the Commonwealth again chose not to

challenge that decision.  Fourth, despite being involved in this litigation since June 2017 and even

participating in a lengthy status conference over a month ago, the Commonwealth did not raise this

issue for four months following this Court's October 24, 2018 Order.  Now, after the parties to the

litigation have finally resolved this protracted litigation on terms favorable to both sides, the

Commonwealth seeks to disrupt the conclusion of the litigation by filing this untimely motion to

intervene.  Fifth, there is no showing whatsoever that the Plaintiffs have not adequately represented the

Commonwealth's interest in this action.  See Resolution Tr. Corp. v. City of Bos., 150 F.R.D. 449, 452

(D. Mass. 1993) (rejecting the Commonwealth's argument in its motion to intervene that the "the City

[of Boston] represents "only a fraction of Commonwealth citizenry," and finding that the fact that the

"City represents fewer than all the citizens of the Commonwealth does not indicate inadequate

representation as explained by the First Circuit.") (citing Moosehead Sanitary Dist. v. S. G. Phillips

Corp., 610 F.2d 49, 54 (1st Cir. 1979)).

Finally, given the history and posture of this case, the prejudice to Defendant if the

Commonwealth's motion were allowed at this juncture cannot be overstated.  Marcus v. Putnam, 60

F.R.D. 441 (D. Mass. 1973) (where only after lengthy negotiations and pretrial discovery procedures

did proposed settlement come into being and proposed intervenors knew of pending litigation and could

have sought intervention at an earlier time motion to intervene would be denied for if allowed it would

prejudice rights of the original parties).  Where, as here, intervention would prejudice the Defendant and

cause undue delay, the Court should exercise its clear discretion to deny the Commonwealth's motion.

See U.S. v. Territory of Virgin Islands, 748 F.3d 514 (3d Cir. 2014) (affirming district court's decision

to deny intervention which would have prejudiced parties in settlement negotiations); Blount-Hill v.

24

Zelman, 636 F.3d 278 (6th Cir. 2011) (district court did not abuse its discretion in denying proposed

intervenors' application for permissive intervention; application was untimely and would cause undue

delay and prejudice to existing parties); In re Endangered Species Act Section 4, 270 F.R.D. at 6

(denying intervention to landowners based on prejudice to original parties where matter was currently

stayed while the parties pursued settlement negotiations); Gallick v. Barto, 828 F.Supp. 1175 (M.D.

Penn. 1993) (ferret organization was not entitled to intervene under permissive intervention rule in

personal injury action brought by parents of baby bitten by ferret against ferret owners and others where

parties had already reached settlement, ferret organization's motion to intervene was untimely, and

intervention would unduly delay and prejudice the adjudication of rights of original parties); U.S. v.

Texas Educ. Agency (Lubbock Independent School Dist.), 138 F.R.D. 503 (N.D. Tex. 1991), aff'd 952

F.2d 399 (5th Cir.), cert. denied, 505 U.S. 1204 (parents of school-age children could not intervene

where intervention would require more time from lawyers representing Government and school district,

and open door to possible payment of attorney fees to parents).  For all of these reasons, the Court

should deny the motion in its entirety.

## CONCLUSION

For all of the reasons set forth herein, Defendant respectfully requests that the Court deny the

Commonwealth's motion in its entirety.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:     /s/ Jessica P. Driscoll
        Jessica P. Driscoll, BBO No. 655394
        Assistant United States Attorney
        United States Attorney's Office
        John Joseph Moakley U.S. Courthouse
        1 Courthouse Way, Suite 9200
        Boston, MA 02210
        (617) 748-3398
Dated: March 27, 2019          Jessica.Driscoll@usdoj.gov

## **CERTIFICATE OF SERVICE**

I, Jessica P. Driscoll, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants by First Class Mail.

<div style="margin-left:40%">

*/s/ Jessica P. Driscoll*
Jessica P. Driscoll
Assistant United States Attorney

</div>

Dated: March 27, 2019